## Richmond

### RAY C. BERRY

v.

### COUNTY OF HENRICO/DIVISION OF FIRE AND LUMBERMAN'S MUTUAL CASUALTY COMPANY

August 31, 1978.

Record No. 771194.

Present: All the Justices.

*Michael S. Shelton (Cohan, Abeloff & Staples, P.C.,* on brief) for appellant.

*Frank C. Maloney, III (Malcolm Parks, III; Maloney, Yeatts, Balfour; Ayers & Barr,* on brief) for appellees.

HARMAN, J., delivered the opinion of the Court.

In this workmen's compensation appeal we are again called upon to deal with the presumption created by Code § 65.1-47.1.[1]

---

[1] Code § 65.1-47.1, in pertinent part, provides:

"The death of, or any condition or impairment of health of, salaried or volunteer fire fighters caused by respiratory diseases, and the death of, or any condition or impairment of health of, salaried or volunteer fire fighters . . . caused by hypertension or heart disease, resulting in total or partial disability shall be presumed to be an occupational disease suffered in the line of duty that is covered by this Act unless the contrary be shown by competent evidence; provided that prior to making any claim based upon such presumption, such salaried or volunteer fire fighter shall have been found free from respiratory diseases, hypertension or heart disease, as the case may be . . . by a physical examination which shall include such appropriate laboratory and other diagnostic studies as the governing body employing such person . . . shall prescribe and which shall have been conducted by physicians whose qualifications shall have been prescribed by such governing body; and provided further, that any such fire fighter . . . or, in the case of his death, any person entitled to make a claim under this Act, claiming the benefit of such presumption shall, if requested by such governing body or its authorized representative submit himself, in the case of a claim for disability benefits, to physical examination by any physician designated or, in the case of a claim for death benefits, submit the body of the deceased fire fighter . . . to a postmortem examination to be performed by the medical examiner for the county, city or town appointed under [§32-31.16]. Such fire fighter . . . or claimant shall have the right to have present at such examination, at his own expense, any qualified physician he may designate."

Two questions are presented, namely: (1) was the claimant entitled to the benefit of the presumption and, if so, (2) was the evidence presented before the Industrial Commission sufficient to rebut this presumption?

Ray C. Berry (claimant or Berry) suffered an acute myocardial infarction on October 3, 1976. Berry, a salaried fire fighter employed by the County of Henrico (County or employer), was not on duty at the time he suffered the heart attack. Indeed, he had worked as a fireman on only one day, September 30, during the preceding two weeks. Because there were no fire alarms on the 30th, Berry spent that day doing routine "housekeeping chores" at the fire station. The record reveals that Berry held a second job, as a driver-deliveryman for a florist, when not engaged in his primary vocation.

Berry, who was then a fireman in the City of Richmond, was hired by the County in December, 1970. As a part of the County's employment procedure, Berry was examined by the County's physician who found him "[f]it for duty as a firefighter".

Following the 1972 amendment which rewrote Code § 27-40.1[2], dealing with disability retirement and death benefits for firemen, the County again had Berry examined. The report of this examination, made at the County's expense at the Health Testing Center at the Medical College of Virginia on August 24, 1973, shows a

---

[2] Code § 27-40.1, after the 1972 amendment, provided:

"Any condition or impairment of health of salaried or volunteer firemen caused by respiratory diseases, hypertension or heart disease resulting in total or partial disability shall be presumed to have been suffered in the line of duty unless the contrary be shown by competent evidence; provided that prior to making any claim based upon such presumption for retirement, sickness or other benefits on account of such total or partial disability, such salaried or volunteer firemen shall have been found free from cardiovascular or respiratory disease by a physical examination which shall include such appropriate laboratory and other diagnostic studies as such governing body may prescribe and which shall have been conducted by physicians whose qualifications shall have been prescribed by such governing body; and provided, further, that any such fireman claiming that his disability was suffered in the line of duty shall, if requested by such governing body or its authorized representative submit himself to physical examination by any physician designated by such governing body which examination may include such tests or studies as may reasonably be prescribed by the physician so designated. Such fireman shall have the right to have present at such examination, at his own expense, any qualified physician he may designate. Nothing herein shall be construed to extend or otherwise affect the provisions of Title 65.1, Code of Virginia, relating to workmen's compensation."

"normal electrocardiogram" and, according to Berry's family physician who later reviewed this report, discloses "no evidence of hypertension". The same physician, Dr. Robert Edgar Mitchell, Jr., stated that he saw, examined and treated Berry at "irregular intervals" from March 19, 1969, to December 3, 1973, and found "no evidence of hypertension or arteriosclerotic cardiovascular disease in any of these examinations".

Dr. Fred D. Robinson, Director of the Coronary Intensive Care Unit at the Medical College of Virginia, became Berry's attending physician upon the claimant's admission to the hospital on October 3. He testified that the claimant's myocardial infarction was caused by a lack of oxygen to the heart muscle brought about by atherosclerosis or hardening of the arteries of the heart.[3] Dr. Robinson related that there were "certain risk factors" such as "type of personality", "high blood pressure, elevated cholesterol in the blood, cigarette smoking, being overweight, lack of exercise [and] family history of heart disease" associated with atherosclerosis. He testified that the presence of these risk factors in an individual indicated a higher likelihood of a heart attack as the result of the underlying disease process. It was Dr. Robinson's opinion that the claimant would never be able to return to work as a fire fighter.

Dr. David B. Propert, Associate Professor of Medicine (Cardiology) and Co-Director of the Heart Station at the Medical College of Virginia, was retained as the employer's expert. From a review of the record, Dr. Propert was of the opinion that Berry's myocardial infarction was "not an occupational disease arising from his employment as a fireman". In his report he stated, in considerable detail, the reasons for his opinion.

This report discloses that atherosclerosis is a chronic process of long duration and indeterminate onset. While the disease is of unknown etiology, certain factors are known "to be associated with an increased risk of development of clinical coronary heart disease". These factors include "familial history of premature atherosclerosis, sex (male), abnormal serum lipids (cholesterol

---

[3] Atherosclerosis is one of three forms of arteriosclerosis.

and/or triglycerides), hypertension, cigarette smoking, obesity and diabetes mellitus". However, "less than half of the patients with coronary heart disease have these major identified and accepted risk factors", so that "the absence of such risk factors does not mean that the disease will not occur because other factors as yet unidentified may produce the disease".

Dr. Propert reviewed the Health Testing Center report of August 24, 1973, and noted the presence of several risk factors revealed by the history and examination. These risk factors included Berry's family history of heart trouble, smoking and overweight or mild obesity. However, this examination also disclosed that Berry's cholesterol, blood sugar and blood pressure were normal. While Berry's electrocardiogram in August, 1973, was normal, Dr. Propert stated that this did not exclude the presence of coronary atherosclerosis because the disease is "a progressive process and becomes clinically evident only after it reaches a particular state in a particular patient".

Dr. Propert noted that the record of the 1973 examination did not indicate that Berry received an "exercise stress test", although Berry stated he received such a test. In commenting on exercise stress tests, Dr. Propert said:

". . . A normal test would not have entirely excluded disease since there may be a false-negative test (a normal test in the presence of significant coronary artery disease or risk of development subsequent to coronary artery disease). False-negative tests occur in between 65 percent and 33 percent of cases depending on the type of testing used . . . ."

To conclude, the physician said:

"To be 'found free from . . . heart disease' would require at least maximal exercise stress testing and if negative, consideration of coronary angiography (x-ray pictures of the coronary arteries) showing normal vessels before one could be certain that coronary atherosclerosis was not present at the time of employment. Even if this were shown, the subsequent development of the process does not mean [the] cause of the process [was] the occupation."

Based on this evidence, the Industrial Commission denied

claimant the benefit of the statutory presumption because there was "competent medical evidence in the record . . . that the examinations and tests so administered are not and could not be, because of their inherent limitations, determinative of the presence or absence of atherosclerosis of the coronary arteries. This evidence fails to prove that the claimant was free of the condition prior to making his claim." Alternatively, the Commission held that even if the presumption did apply, there was competent medical evidence to rebut the presumption.

■ First we will deal with the Commission's holding that Berry was not entitled to the benefit of the presumption because he did not meet the first proviso of Code § 65.1-47.1. The record discloses that Berry's family physician, Dr. Mitchell, who examined Berry on several occasions between March, 1966, and December, 1973, found "no evidence of hypertension or arterioscleratic cardiovascular disease". The same physician, after reviewing the Health Testing Center Report which showed a normal electrocardiogram and other data, interpreted that report as showing "no evidence of hypertension". When Berry was required to undergo a physical examination in 1973, after the General Assembly rewrote Code § 27-40.1, the governing body of the County was entitled to and did determine the qualifications of the physician and the scope and extent of such examination, including the laboratory and diagnostic tests which were performed.

When Code § 65.1-47.1 was first enacted in 1976, the language of this section tracked the language dealing with the presumptions already contained in Code § 27-40.1, and the same bill deleted the final sentence theretofore contained in § 27-40.1, fn. 2 *supra*, which provided "[n]othing herein shall be construed to extend or otherwise affect the provisions of Title 65.1, Code of Virginia, relating to workmen's compensation." The same bill also enacted Code § 27-40.1:1, which extended the presumption of Code § 27-40.1 to firemen in those localities which did not require its firemen to undergo such a physical examination prior to dates therein established. Acts, 1976 c. 772.

When these statutes are read and considered together, we think it clear that the General Assembly intended the presumption to apply in those instances where an examination conducted under

the direction and control of the employer fails to make a positive finding of the disease which subsequently brings about the disability or death of the fire fighter. We hold, therefore, that the Industrial Commission erred in not applying the presumption to this case.

■ This brings us to the second question raised by this appeal, *viz.* whether the evidence was sufficient to rebut the presumption. In *Page* v. *City of Richmond*, 218 Va. 844, 848, 241 S.E.2d 775, 777 (1978), decided while this case was pending on appeal, we held that ". . . the employer must adduce competent medical evidence of a non-work-related cause of the disabling disease . . ." in order to rebut the statutory presumption. Since the evidence in the record before us fails to disclose such a cause, we hold that the statutory presumption prevails and controls.

For the reasons assigned, the order of the Industrial Commission will be reversed, and the case will be remanded for a determination of the benefits to which Berry is entitled.

*Reversed and remanded.*