265 S.E.2d 687 (1980)
George GARRISON
v.
PRINCE WILLIAM COUNTY BOARD OF SUPERVISORS.
Record No. 790659.
Supreme Court of Virginia.
April 18, 1980.
Peter M. Sweeny, Alexandria (Ashcraft & Gerel, Alexandria, on brief), for appellant.
Joseph Dyer, Arlington (Siciliano, Ellis, Sheridan & Dyer, Arlington, on brief), for appellee.
Before I'ANSON, C. J., and CARRICO, HARRISON, COCHRAN, THOMPSON, POFF and COMPTON, JJ.
*688 I'ANSON, Chief Justice.
In this appeal, we review an Industrial Commission decision denying workmen's compensation benefits for wages lost due to hypertension. The claim was initially heard by a deputy commissioner, who issued an opinion ruling that the claim was untimely filed and that the claimant, George Garrison, had failed to establish his disease was occupationally related. On review, the full Industrial Commission affirmed the deputy commissioner's rulings. On appeal, the claimant argues the Commission erred in ruling that his claim was barred by Code § 65.1-52[1] and in failing to apply Code § 65.1-47.1,[2] which provides a rebuttable presumption of a causal relationship between police officers' work and hypertension or heart disease.
In 1969, the claimant was hired as a deputy sheriff in the Sheriff's Department of Prince William County. Applicants for positions as fire fighter and police officers for Prince William County underwent a pre-employment physical examination as a part of the applicant screening procedure. The only record admitted into evidence concerning the claimant's physical examination was a September 1969 letter from a doctor at the Prince William County Health Department. In his letter, the doctor, who was the director of the health department, stated that the claimant "is qualified for duty as a Deputy Patrolman subject to results of lab tests and chest x-ray." In 1970, when the Prince William County Police Department was formed, the claimant qualified for a position in the department. The personnel director for the county informed him that another physical examination was unnecessary because the claimant had already "successfully passed a physical examination of the same requirements."
Nelson E. Ryan, the administrative supervisor of the police department, testified at length concerning physical examination procedures in effect after the department was formed. Persons who had undergone a recent physical examination when applying for employment with the sheriff's department were accepted into the police department without an additional physical examination. All other police officers underwent a physical examination prior to employment by the department. Police department rules provided that an applicant must be "in good physical health" but did not set forth specific employment requirements for an applicant's health. The health department's practice was to check an applicant's blood pressure during the pre-employment physical for deputy sheriffs and, after 1970, for police officers of the police department. Officer Ryan testified, however, that he did not know whether the health department would have deemed a candidate unqualified for duty if the pre-employment physical examination revealed high blood pressure. In addition to this pre-employment examination, each police officer submitted to an annual physical examination. From 1970 through 1974, the annual checkup merely *689 consisted of checking an officer's eyesight and weight. In 1975, a more detailed examination procedure for these annual checkups was instituted. Officers 35 years old or older were given a complete physical examination. Officers under 35 years old were tested for eyesight, hearing, weight, and blood pressure.
After being told during his 1975 checkup that his blood pressure was high, the claimant decided to see a private physician, Dr. Francisco R. Barrera. Dr. Barrera's report, dated August 7, 1975, shows that the claimant suffered from hypertension and that he prescribed medication to lower the claimant's blood pressure. The claimant admitted in his testimony that Dr. Barrera told him he had an elevated blood pressure, but denied that Dr. Barrera had prescribed medication. The doctor's report also shows that the claimant was rejected from military service in 1966 because of hypertension. Although acknowledging that he had been told in 1966 that his blood pressure was elevated, the claimant testified that he was not inducted into military service because of a student deferment. When the claimant was told during his 1977 annual examination that his blood pressure was high, he went to see another physician, Dr. Kok-Seah Lee, in September 1977. Dr. Lee informed him during the course of his treatment that he suffered from hypertension and advised him to curtail his work activity. The claimant filed his claim for workmen's compensation benefits in August 1978.
The deputy commissioner ruled that since "this claimant was not free of [hypertension] prior to making his claim, nor prior to the enactment of § 65.1-47.1," the claimant was not entitled to claim the benefit of the presumption set forth in Code § 65.1-47.1. The deputy commissioner also concluded that the evidence, apart from the statutory presumption, failed to show that the claimant's hypertension was occupationally related. In addition, the deputy commissioner held that, even if the claim were compensable, it was barred by Code § 65.1-52, the applicable statute of limitations. The deputy commissioner ruled that the claimant received a communication of "a diagnosis of an occupational disease" when he was informed by Dr. Barrera that he suffered from hypertension, even though Dr. Barrera did not inform him that his hypertension was work related. The deputy commissioner also noted that the claim was not filed within two years of the effective date (July 1, 1976) of Code § 65.1-47.1, thus indicating that the two-year period in Code § 65.1-52 began to run when Code § 65.1-47.1 became effective.
We agree with the claimant's contention that Code § 65.1-52 does not bar his claim. A person has not received "a diagnosis of an occupational disease" until he receives a diagnosis that he suffers from an "occupational disease": one "arising out of and in the course of the employment." Code § 65.1-46. See also Van Geuder v. Commonwealth, 192 Va. 548, 65 S.E.2d 565 (1951). While the claimant was informed in 1975 that he suffered from hypertension, he did not at that time receive a diagnosis that his hypertension arose out of and in the course of his employment. Therefore, contrary to the Commission's holding, the statute did not begin to run at that time. Nor did the two-year period begin to run with the enactment date of Code § 65.1-47.1. The two-year period set forth in the pertinent clause of Code § 65.1-52 begins to run only when a claimant has received "a diagnosis of an occupational disease." That a claimant might have successfully brought a claim at an earlier date due to the statutory presumption set forth in Code § 65.1-47.1 is irrelevant to the resolution of whether the provisions of Code § 65.1-52 bar a claim.
Having determined that Garrison's claim was not barred by Code § 65.1-52, we now resolve whether the Commission erred in failing to apply the statutory presumption provided in Code § 65.1-47.1. Code § 65.1-47.1 expressly provides that "prior to making any claim based upon such presumption... [the claimant] shall have been found free from hypertension or heart disease... by a physical examination" conducted by a physician whose qualifications were prescribed by the employer and *690 which included diagnostic tests selected by the employer.
Contrary to the claimant's assertion, language in Page v. City of Richmond, 218 Va. 844, 241 S.E.2d 775 (1978), is inapplicable to the question to be resolved in this case. Whether the preconditions for the statutory presumption of Code § 65.1-47.1 had been met was not at issue in Page. Instead, Page was limited to an analysis of the effect of the statutory presumption after the preconditions for its application had been met. Read in context, the language in Page relied upon by the claimant[3] is pertinent only if these preconditions have been satisfied.
Far more helpful to the resolution of the issue in this case is Berry v. County of Henrico, 219 Va. 259, 247 S.E.2d 389 (1978), which discusses the conditions precedent to the application of the statutory presumption. Prior to being hired as a fireman in 1970, Berry underwent a pre-employment physical examination conducted by a physician employed by Henrico County, who determined Berry was "[f]it for duty as a firefighter." 219 Va. at 261, 247 S.E.2d at 390. Another examination conducted by the county in 1973 resulted in a "normal electrocardiogram" and disclosed "no evidence of hypertension." 219 Va. at 262, 247 S.E.2d at 390. Following his heart attack on October 3, 1976, Berry brought a claim for disability resulting from the heart attack. The Commission held that since the 1973 examination did not include tests that would be determinative of the presence or absence of atherosclerosis, the evidence failed to prove that the claimant was free of the condition prior to filing his claim. In reversing the Commission's order and holding that Berry was entitled to claim the benefit of the statutory presumption, we concluded that "the General Assembly intended the presumption to apply in those instances where an examination conducted under the direction and control of the employer fails to make a positive finding of the disease which subsequently brings about the disability." 219 Va. at 264-65, 247 S.E.2d at 392.
Having reviewed the evidence in this case, we conclude that the Commission erred in failing to apply the statutory presumption set forth in Code § 65.1-47.1. The claimant underwent a 1969 pre-employment physical examination, which generally included taking an applicant's blood pressure as well as conducting lab tests and a chest x-ray. The medical doctor conducting the examination was employed by the county health department and chosen to conduct the examination by the personnel department. The police department's sole guideline to the health department doctors conducting the examinations was that it wanted "good, healthy specimens when they [the prospective employees] come to us." The doctor conducting the claimant's examination determined that he was "qualified for duty as a Deputy Patrolman subject to the results of lab tests and chest x-ray." Following the formation of the county police department in 1970, the personnel director for the county informed the claimant that another physical examination was unnecessary for him to qualify for employment with the county police department because he had "successfully passed a physical examination of the same requirements."
We hold that the results of this 1969 physical examination satisfy the precondition for making a claim based upon the statutory presumption. Code § 65.1-47.1 states that a claimant may not bring a claim based upon the statutory presumption unless "prior to making any claim based upon such presumption, [the claimant has] *691 been found free from hypertension ... by a physical examination" conducted by a physician whose qualifications have been prescribed by the governing body and including diagnostic tests specified by the employer. In Berry v. County of Henrico, 219 Va. at 264-65, 247 S.E.2d at 392, we stated that "the General Assembly intended the presumption [of Code § 65.1-47.1] to apply in those instances where an examination conducted under the direction and control of the employer fails to make a positive finding of the disease which subsequently brings about the disability or death" of a claimant. The examination conducted in 1969 by the Prince William County Health Department doctor satisfies all these conditions. The governing body had the right to prescribe whatever diagnostic tests it wished, and the governing body selected the physician performing the examination. In addition, the examination "fail[ed] to make a positive finding of" hypertension, 219 Va. at 265, 247 S.E.2d at 392, concluding instead that the claimant was "qualified for duty as a Deputy Patrolman."[4]
The subsequent examinations revealing hypertension in 1975 and 1977 do not undermine the claimant's entitlement to the statutory presumption. Code § 65.1-47.1 provides that a claimant can claim the benefit of the presumption if "prior to making any claim based upon such presumption... [he or she] shall have been found free" of the disease resulting in the disability. A claimant who has undergone a pre-employment physical examination failing to make a positive finding of the disease cannot be denied the benefit of the presumption merely because subsequent examinations conducted several years after his employment as a police officer or fire fighter result in such a finding. A diagnosis of the disease must clearly precede the filing of a claim for disability resulting from the disease.[5] It is untenable to suggest that such a diagnosis would defeat a claim for the statutory presumption even though an earlier examination of the claimant had not made a positive finding of the disease. If the General Assembly had intended such a result, it could have worded the statutory language differently to reflect such an intent. In light of the wording of the present statute, we conclude that the claimant is entitled to claim the benefit of the statutory presumption set forth in Code § 65.1-47.1.
The judgment of the Industrial Commission is reversed, and the case is remanded to the Commission. The Commission is directed to determine whether competent medical evidence rebuts the statutory presumption, under the ruling of Page v. City of Richmond, 218 Va. 844, 241 S.E.2d 775 (1978). In the absence of such evidence, the Commission is directed to determine the benefits to which the claimant is entitled.
Reversed and Remanded.
NOTES
[1] Code § 65.1-52 (Cum.Supp.1979) provides in pertinent part: "The right to compensation under this chapter shall be forever barred unless a claim be filed with the Industrial Commission within three years for coal worker's pneumoconiosis and two years for all other occupational diseases after a diagnosis of an occupational disease is first communicated to the employee or within five years from the date of the last injurious exposure in employment, whichever first occurs...."
[2] Code § 65.1-47.1 (Cum.Supp.1979) provides in pertinent part: "The death of, or any condition or impairment of health ... of any member of a county, city or town police department. . . caused by hypertension or heart disease, resulting in total or partial disability shall be presumed to be an occupational disease suffered in the line of duty that is covered by this act unless the contrary be shown by a preponderance of competent evidence; provided that prior to making any claim based upon such presumption . . . such member of a county, city or town police department. . . shall have been found free from hypertension or heart disease, as the case may be, by a physical examination which shall include such appropriate laboratory and other diagnostic studies as the appointing authority or as the governing body employing such person. . . shall prescribe and which shall have been conducted by physicians whose qualifications shall have been prescribed by such appointing authority or by such governing body. . . ."
[3] In particular, the claimant relies upon the following language: "The obvious purpose of the rebuttable presumption is to establish by law, in the absence of evidence, a causal connection between death or disability from certain diseases and the occupation of a fire fighter. The effect of the presumption is to eliminate the necessity for proof by the claimant of causal connection. Thus, Page had only to prove his occupation as a fireman and his disability from a respiratory disease to make a prima facie case. In the absence of evidence, the statutory presumption prevails and controls." Page v. City of Richmond, 218 Va. at 847, 241 S.E.2d at 777.
[4] The administrative supervisor for the county police department testified that he could not find medical records concerning the claimant's pre-employment physical examination at the police department, health department, or personnel department. If these records revealed a positive finding of hypertension but the claimant was nevertheless deemed qualified for duty, the claimant would not be entitled to benefit from the statutory presumption set forth in Code § 65.1-47.1.
[5] See, e. g., Berry v. County of Henrico, 219 Va. 259, 247 S.E.2d 389 (1978), in which the claimant underwent examinations in 1970 and 1973, both of which failed to make a positive finding of the disease subsequently resulting in disability. Following a 1976 heart attack, a physical examination revealed that he suffered from atherosclerosis. Although Berry was not free from the disease immediately "prior to making [his] claim based upon such presumption," we held that the statutory presumption was applicable. See also Page v. City of Richmond, 218 Va. 844, 241 S.E.2d 775 (1978), in which a claimant was found free of respiratory disease during a pre-employment examination in 1945, but found in 1976 to have a respiratory disease necessitating his retirement.