## Alexandria

## FAIRFAX COUNTY FIRE AND RESCUE DEPARTMENT

v.

## WILLIAM HARRISON MITCHELL

No. 0559-91-4

Decided August 18, 1992

COUNSEL

Peter D. Andreoli, Jr., Senior Assistant County Attorney (David T. Stitt, County Attorney; Robert Lyndon Howell, Deputy County Attorney, on brief), for appellant.

Michael W. Heaviside (Ashcraft & Gerel, on brief), for appellee.

OPINION

**ELDER, J.**—The Fairfax County Fire and Rescue Department (the Department) contends that the Virginia Workers' Compensation Commission* erred in awarding occupational disease benefits to William Harrison Mitchell, claimant, who was employed as an emergency medical services lieutenant. The sole issue on appeal is whether the employer's evidence rebutted the presumption provided by Code § 65.1-47.1. We hold that, because the rebuttal evidence failed to exclude a work-related factor as a cause of the heart disease, the finding of the commission that the employer failed to rebut the presumption in claimant's favor is conclusive and binding on appeal.

Claimant was employed as a fire fighter by Fairfax County in 1967. Prior to starting work, he underwent a pre-employment physical examination and was found to be free of hypertension and heart disease. Over the years, claimant was promoted from fire fighter to fire technician, to emergency medical services sergeant, and finally to emergency medical services lieutenant. As a lieutenant, he worked twenty-four hours on and twenty-four off, responding to fire and emergency medical calls.

Prior to November 18, 1988, claimant's work duties included being in charge of a mobile intensive care unit and patient care, responding to fire calls, conducting building and fire inspections, and making emergency calls. He described the work as stressful.

Claimant testified that on November 18, 1988, he participated in mandatory training at the Department's training academy. While performing CPR on a mannequin, he experienced heart-

---

* Formerly the Industrial Commission of Virginia. Effective October 1, 1991, Title 65.1 was recodified as Title 65.2. All references in this opinion are to Title 65.1, in effect at the time the Commission's decision was rendered in this case.

burn and, when relief eluded him, he went to a hospital where he was treated by a cardiologist, Dr. George A. Besch. Three days later claimant was diagnosed as suffering from a myocardial infarction.

■ Code § 65.1-47.1 provides a rebuttable presumption that, absent a preponderance of competent evidence to the contrary, a causal connection exists between an individual's employment as a salaried fire fighter and certain diseases.[1] The effect of the presumption is to eliminate the need for a claimant to prove a causal connection between his disease and his employment. In the absence of competent evidence to the contrary, the statutory presumption controls, and the claimant prevails.

■ In order to establish a *prima facie* case, the claimant need only prove his occupation and his disability from one of the diseases identified by statute. The presumption shifts the burden of going forward with the evidence from the claimant to his employer. *Page v. City of Richmond*, 218 Va. 844, 241 S.E.2d 775 (1978).

Various physicians examined claimant. Dr. Besch, the cardiologist at the hospital where Mitchell was taken when he fell ill on November 18, 1988, concluded that claimant's employment as a fire fighter was not a direct cause of either the myocardial infarction or the presence of coronary atherosclerosis. However, he failed to rule out stress as a possible contributing cause of claimant's condition. In a December 6, 1989 letter, Dr. Besch wrote that stress associated with claimant's work could contribute to the formation of atherosclerotic plaque and could have contributed to the infarction.

---

[1] Code § 65.1-47.1 PRESUMPTION AS TO DEATH OR DISABILITY FROM RESPIRATORY DISEASE. HYPERTENSION OR HEART DISEASE.

The death of, or any condition or impairment of health of, salaried or volunteer fire fighters caused by respiratory diseases, and the death of, or any condition or impairment of health of, salaried or volunteer fire fighters, or of any member of the State Police Officers Retirement System, or of any member of a county, city or town police department, or of a sheriff, or of a deputy sheriff, or city sergeant or deputy city sergeant of the City of Richmond, caused by hypertension or heart disease, resulting in total or partial disability shall be presumed to be an occupational disease suffered in the line of duty that is covered by this Act unless the contrary be shown by a preponderance of competent evidence.

Dr. Marc Gallini, claimant's physician from 1979 until the 1988 heart attack, agreed that work-related stress did not cause claimant's hypertension and heart disease although it "may have contributed" to them. Dr. Lawrence A. Miller determined that claimant would in all likelihood have developed coronary artery disease regardless of his occupation, yet his acute myocardial infarction in 1988 may have been precipitated by job stress. Dr. Edward A. Jones concluded that claimant's cardiovascular problems were not directly related to his employment as a fire fighter but flowed from his other medical conditions.

Based on this medical evidence, the commission found that "all of the physicians who have treated or examined the claimant have related his coronary atherosclerosis and the myocardial infarction to the various risk factors."[2] Noting that "none of the physicians have eliminated his job stress as being a contributing factor," the commission found that medical evidence established a clear "possibility" of a relationship between the stress and the heart disease and hypertension.

Having established that he was a salaried fire fighter, that prior to his employment he experienced no coronary problems or hypertension, and that he subsequently became disabled due to both coronary problems and hypertension, claimant is entitled to the statutory presumption, provided by Code § 65.1-47.1, that his condition is an occupational disease. This presumption stands until "the contrary be shown by competent evidence." *Id.*

The law governing our review of the sufficiency of evidence to rebut the statutory presumption is well settled.

> In order to rebut the presumption, it is not sufficient that the employer merely adduce evidence that the heart disease was not caused by the employment; the employer must establish by competent medical evidence a non-work-related cause to rebut or overcome the statutory presumption that causation exists. *If the rebuttal evidence fails to exclude a work-related factor as causing the heart disease . . .* , the finding of

---

[2] The record shows these risk factors to be (1) a twenty-year history of hypercholesterolemia; (2) a history of a two-pack-per-day cigarette habit, discontinued in 1984; (3) a recent history of hypertension; and (4) a family history of accelerated atherosclerosis. Claimant's father suffered his first myocardial infarction at age 42 and died from an infarction at age 57.

the Commission as to causation is conclusive and binding on appeal.

*Virginia Dep't of State Police v. Talbert*, 1 Va. App. 250, 253, 337 S.E.2d 307, 308 (1985) (citations omitted) (emphasis added). Here, the employer presented rebuttal evidence pointing to causes of claimant's condition other than work. However, its evidence failed to exclude work-related stress as a factor causing the heart disease.

In *County of Amherst Board of Supervisors v. Brockman*, 224 Va. 391, 297 S.E.2d 805 (1982), the Supreme Court of Virginia held that the commission did not err in ruling that the statutory presumption was not rebutted where a rebutting physician did not exclude stress as a possible "contributing cause." *Id.* at 399, 297 S.E.2d at 810. We are likewise bound by the commission's decision.

For the foregoing reasons, the decision of the commission is affirmed.

*Affirmed.*

Baker, J., concurred.

Duff, J., dissenting.

I respectfully dissent from the conclusion reached by the majority. In order to rebut the statutory presumption, the employer was required to adduce competent medical evidence, by a simple preponderance, of a non-work related cause of the disease. As I view the record, this was done. There is no requirement that the employer's rebuttal evidence exclude or eliminate any possibility that employment was a factor in the claimant's infarction. That standard would be tantamount to a requirement of proof beyond a reasonable doubt.

The initial inquiry must necessarily examine the nature of the competent medical evidence before the commission on the issue of the cause of Mitchell's heart disease and infarction. However, in examining the medical evidence in the record, we must distinguish between "competent" evidence of causation and mere opinions of "possibilities." Traditionally, in order to be admissible on the issue of causation, a physician's opinion had to be stated in terms of reasonable medical certainty. Mere possibility that a given condition was caused by an injury or accident is insufficient.

In *Westmoreland Coal Co. v. Campbell*, 7 Va. App. 217, 372 S.E.2d 411 (1988), a panel of this Court reviewed the general rules of burden of proof in workers' compensation cases. While factually involving a claimant's burden of proving that his hearing loss was caused by his employment, *Campbell* illustrates the quantum of medical proof necessary to satisfy the burden of production of evidence on the issue whether the hearing loss arose out of and in the course of employment. Apropos to the issue in the case before us, *Campbell* held:

> It is sufficient in this case simply to note that the medical evidence showed that the loss of hearing merely was "consistent" with exposure to noise in the mines. We hold that such evidence does not meet the claimant's burden of production on the issue whether the disease arose out of and in the course of employment; thus, we hold that . . . no reasonable mind could conclude that such issue was established "to a reasonable medical certainty." Expert testimony that a fact is "consistent" with a particular cause is not the equivalent of expert testimony "to a reasonable medical certainty."
>
> * * *
>
> However, if the expert medical witnesses cannot testify that it is at least *more probable* than not that the disease arose out of and in the course of employment, compensation must and should be denied, not because the law requires more of medicine than it can produce, but because the law requires more than simply proof that the disease "might" have been caused by a particular result.

*Id.* at 223-24, 372 S.E.2d at 416 (emphasis added).

The holding in *Campbell* is consistent with the Supreme Court's decisions in *Cook v. City of Waynesboro Police Department*, 225 Va. 23, 300 S.E.2d 746 (1983), and *Doss v. Fairfax County Fire & Rescue Department*, 229 Va. 440, 331 S.E.2d 795 (1985). In *Cook*, the Supreme Court affirmed the commission's finding that the presumption had been rebutted by medical testimony to the effect that the claimant's heart condition was "probably" due to a congenital defect. The Court observed that a statement that a certain condition was "probably present" meant there was reasonable likelihood of the condition's existence and was suf-

ficient to permit a trier of fact to accord the statement probative weight. 225 Va. at 29-30, 300 S.E.2d at 749. Inferentially, evidence of a condition's "possible presence" would not be sufficient to merit probative weight.

In *Doss*, the Court affirmed the commission's finding that the presumption had been rebutted by medical evidence that the claimant's asthma was "more than likely" an hereditary phenomenon.

While arising in a criminal case and, thus, in a somewhat different context, the holding of the Supreme Court in *Spruill v. Commonwealth*, 221 Va. 475, 271 S.E.2d 419 (1980), is illustrative of my view of the law in this area.

A medical opinion based on a "possibility" is irrelevant, purely speculative and, hence, inadmissible. In order for such testimony to become relevant, it must be brought out of the realm of speculation and into the realm of reasonable probability; the law in this area deals in "probabilities" and not "possibilities."

*Id.* at 479, 271 S.E.2d at 421.

I would hold that analogous reasoning applies to the burden of proof in the case before us. Medical opinions that stress associated with the employment "might have" or "may have" or "could have" been the cause of Mitchell's coronary infarction refer to possibilities, not probabilities and, hence, are speculative and upon proper objection are inadmissible. Such evidence does not aid the trier of fact in determining whether it is more likely than not — more probable — that it did cause the heart attack.

With that background, the medical evidence in the record consists of the reports of four physicians as follows:

### DR. GEORGE A. BESCH

Dr. George A. Besch, the cardiologist at the hospital where Mitchell was transported when taken ill on November 18, 1988, issued various reports which, in pertinent part, may be summarized as follows: In a letter dated April 22, 1989, Dr. Besch opined that the claimant's heart problem was related to the presence of his coronary risk factors — smoking, family history of

coronary disease, hypercholesterolemia and hypertension. He concluded in this report that Mitchell's employment as a fire fighter was not directly a cause of either the myocardial infarction or the presence of coronary atherosclerosis.

In a form report dated March 10, 1989, and titled "Physician's Report on Disability of a Member, Fairfax County Supplemental Retirement System," Dr. Besch affirmed that Mitchell's disability occurred in the performance of his duties. However, in an earlier status report of February 1, 1989, Dr. Besch reported that Mitchell had developed chest pains at the training academy, but that the diagnosed condition was *not* due to the occurrence described. As I view these two reports, they conclude that, while the infarction occurred in the course of his employment, it did not arise out of the employment.

In a letter of December 6, 1989 to Don A. McCorry, Retirement Administrator of the appropriate Fairfax County Retirement System, Dr. Besch concluded that stress associated with Mitchell's work *could* very well have contributed to the formation of atherosclerotic plaque and *could* very well have contributed to the infarction.

Finally, in a letter dated June 13, 1990, Dr. Besch opined that "the primary contributing factors in the development of [Mitchell's] coronary artery disease are the smoking, hypertension, hypercholesterolemia and family history." He concluded by stating that "Mitchell would have developed coronary atherosclerosis regardless of his occupation, and his occupation as fire fighter was virtually non-contributory to his cardiac condition."

### DR. MARC GALLINI

Dr. Marc Gallini, who was Mitchell's physician from 1979 until his heart attack in November 1988, and who had treated him for hypertension, stated in a report dated May 15, 1989, that "work related stress may have contributed to his hypertension and heart disease but *certainly didn't cause them*." (emphasis added).

### DR. LAWRENCE A. MILLER

Dr. Lawrence A. Miller completed a cardiology consultation on Mitchell under date of April 11, 1989. He noted the various risk factors for accelerated atherosclerosis. His final conclusion was

that it was likely that Mitchell would have developed coronary artery disease regardless of his occupation; however, his acute myocardial infarction in 1988 *may* have been precipitated by job stress. This evidence, of course, does not satisfy the quantum of proof mandated by *Campbell.*

## DR. EDWARD A. JONES

Dr. Edward A. Jones, Fairfax County Medical Examining Board, prepared a report in response to Mitchell's application for service-connected disability retirement. He based his report on a review of the records and an examination conducted August 4, 1989. He also reviewed the case with Dr. Garth Dettinger and Dr. Richard Miller, both of the Fairfax County Health Department. Dr. Jones stated that their collective opinion was that Mitchell's cardiovascular problems were not directly related to his employment as a fire fighter, but were connected with his other medical conditions.

Based on this medical evidence, the commission found that "all of the physicians who have treated or examined the claimant have related his coronary atherosclerosis and the myocardial infarction to the various risk factors." It further found that "none of the physicians have eliminated his job stress as being a contributing factor . . . ." The commission finally found that the medical evidence established a clear "possibility" as to the relationship of the stress to the heart disease and hypertension.

In order to rebut the presumption, the Department had only to prove a specific non-work related cause of the heart attack by a preponderance of competent medical evidence. *See Page v. City of Richmond,* 218 Va. 844, 848, 241 S.E.2d 775, 777 (1978); *Cook,* 225 Va. at 28, 300 S.E.2d at 748. It was not required to prove such cause beyond a reasonable doubt, nor was it required to exclude every possibility that the work may have been a contributing cause. So long as the evidence of a work-related cause remains a mere possibility, it cannot prevail over preponderating evidence of a non-work related cause.

I would hold that the finding by the commission that all of the physicians related the infarction to the various risk factors clearly rebutted the statutory presumption of Code § 65.1-47.1. Thus, Mitchell had the burden of proving by a preponderance of the evi-

dence, without the benefit of the presumption, that his heart condition was caused by his employment.

On brief and in argument, the claimant asserted that our Supreme Court has consistently rejected the traditional coronary risk factors as a sufficient non-work related cause of a claimant's heart disease. He cites *Berry v. County of Henrico*, 219 Va. 259, 247 S.E.2d 389 (1978), and *County of Amherst Bd. of Supervisors v. Brockman*, 224 Va. 391, 297 S.E.2d 805 (1982), in support thereof. The claimant's reliance on these cases is misplaced.

In *Berry*, there was no competent medical evidence that Berry's heart attack was the result of the risk factors. Various medical reports noted the risk factors, but the opinion contains no expert evidence that they caused the infarction. By contrast, in the case before us, Drs. Besch and Jones specifically stated the risk factors were the cause of the heart attack.

In *Brockman*, the issue pertinent to the present case was whether the commission erred in ruling that the statutory presumption had not been rebutted. The court pointed out that there was a conflict between the testimony of Drs. Leonard and Sackett, with the commission adopting that of Dr. Leonard. 224 Va. at 398-99, 297 S.E.2d at 809-10. I find nothing in the decision that holds that the risk factors, if properly identified, cannot be a competent non-work related cause. Such a determination depends on the testimony of the experts in each case. In this case, there is no conflict with the direct statement of at least two of the physicians that the risk factors were the primary cause of Mitchell's heart attack.

As observed earlier, Mitchell had the burden of producing evidence "to a reasonable medical certainty" that his disease arose out of and in the course of employment. As I view the record, a fair reading of the medical evidence does not meet this standard. None of the medical reports directly state that the employment caused the disease. As the commission noted, the evidence, at best, establishes only a "possibility" of a relationship between job stress and Mitchell's heart disease. A "possibility" does not carry the burden of proof. Indeed, the strong tenor of all of the medical evidence in the record establishes that it is more likely than not

that the heart disease arose from causes outside of the employment.

For these reasons, I dissent and would reverse.