COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Alston and Chafin
Argued at Salem, Virginia


ARTHUR M. LIPSCOMB

MEMORANDUM OPINION* BY
v.       Record No. 2157-13-3            JUDGE ROSSIE D. ALSTON, JR.
                                         MAY 27, 2014
CITY OF LYNCHBURG


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Michael A. Kernbach (Law Office of Michael A. Kernbach, P.C.,
on brief), for appellant.

Richard D. Lucas (Lucas & Kite, PLC, on brief), for appellee.


Arthur M. Lipscomb ("claimant") appeals a decision of the Workers' Compensation

Commission ("the commission") denying him medical benefits for periods of temporary total

disability resulting from heart disease claimant contends arose out of and in the course of his

employment with the City of Lynchburg Fire and Rescue Department.  On appeal, claimant

contends that the commission i) erred in holding that claimant was required to suffer a loss of

wages in order to receive the presumptive benefits pursuant to Code § 65.2-402,[1] and ii) erred in

holding that without the loss of actual earnings, claimant was not entitled to an award for

benefits due to heart disease.  Finding no error, we affirm.

─────────────

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Code § 65.2-402(B) provides, in relevant part:

Hypertension or heart disease causing the death of, or any health
condition or impairment resulting in total or partial disability of
(i) salaried or volunteer firefighters, . . . shall be presumed to be
occupational diseases, suffered in the line of duty, that are covered
by this title unless such presumption is overcome by a
preponderance of competent evidence to the contrary.

## I. Background

The evidence indicated that claimant retired from the City of Lynchburg Fire Department on February 1, 2009, where he worked as a firefighter-medic for over 31 years. Claimant retired due to a work-related knee injury for which he received a workers' compensation settlement. During and after his retirement, claimant also worked part-time as Director of Legislation for the Virginia Professional Firefighters. After his retirement, claimant continued to receive VRS and Social Security disability benefits.

On April 22, 2010, claimant was walking in Richmond when he "started to have tightness in the chest and shortness of breath." Claimant drove back to Lynchburg and had lunch with his wife before going to the fire station for an EKG. From the fire station, claimant went to Lynchburg General Hospital, where he waited for four hours before leaving and going to Bedford Memorial Hospital, where he was seen and evaluated. Claimant was discharged that day with instructions to call his physician first thing the next morning for an appointment.

Claimant then saw his personal physician, Dr. John Williams, who noted that claimant had a history of Type II diabetes, obesity, hypertension, and hyperlipidemia, "recurrent and prolonged chest discomfort" and "multiple risk factors for heart disease." Dr. Williams admitted claimant to Lynchburg General Hospital for cardiac evaluation, including catheterization. At Lynchburg General, Dr. Christopher Lewis provided a consultation of claimant and also recommended a catheterization.

On April 23, 2010, Dr. Michael Valentine performed claimant's cardiac catheterization and noted that claimant showed "mild to moderate coronary disease" and recommended cardiac therapy. Claimant was discharged from Lynchburg General Hospital on April 24, 2010. His discharge summary noted that claimant's chest pain resolved, that his "post cath course was

unremarkable," and that he should follow up with Dr. Williams in a week and with cardiology in a couple weeks.

Claimant returned to Dr. Williams on April 29, 2010, reportedly feeling well and without chest pain. On May 17, 2010, claimant followed up with a physician's assistant at Dr. Valentine's office who noted that claimant had no post catheterization complications, did not report any chest discomfort, and referred claimant to cardiac rehabilitation. Claimant was discharged from cardiac rehabilitation on December 1, 2010, after only four sessions.

On February 18, 2011, Dr. Valentine responded to claimant's counsel's letter regarding his condition, in which Dr. Valentine noted that claimant suffered from coronary heart disease, had multiple risk factors for heart disease, and that it was "unknown" whether "occupational stress, identified as a psychological [coronary artery disease] risk factor . . . was also a contributing risk factor in the development or acceleration of the heart disease in [claimant.]" Dr. Valentine agreed that when claimant was discharged from Lynchburg General Hospital on April 24, 2010, he was "advised to remain on no work activity until follow-up with a cardiologist," although those instructions were not reflected in the discharge report. Dr. Valentine also agreed that claimant was released to "full activity" on May 17, 2010.

However, on March 5, 2011, Dr. Valentine responded to a questionnaire from counsel for the City of Lynchburg (herein the City), in which he agreed that claimant did not require any treatment other than medical therapy, that claimant had multiple risk factors for coronary heart disease, and that he "never advised [claimant] to stop work, nor . . . place[d] any restrictions on him based upon [the] diagnosis of mild to moderate coronary heart disease."

Dr. Williams also responded to counsel's questionnaire, in which he agreed that claimant suffered from coronary heart disease and that the exact cause of the malady was unknown. Dr. Williams noted that along with several other risk factors, claimant's occupational stress as a

- 3 -

firefighter "was also a contributing risk factor in the development or acceleration of coronary heart disease present in [claimant]." Dr. Williams further noted that claimant was "temporarily totally disabled from any and all employment from April 22, 2010, through April 24, 2010," the period of his hospitalization.

Seeking a second opinion regarding his heart condition and its cause, claimant saw Dr. Richard Schwartz on April 17, 2012. Dr. Schwartz issued his report on August 9, 2012, in which he agreed that claimant suffered from coronary heart disease and that he had several risk factors for heart disease including diabetes and hypertension. Dr. Schwartz noted that "[i]n the case of [claimant], one would have to implicate his occupation as a firefighter and the stressors related thereto" as a possible contributing factor to heart disease.

Claimant initially filed his claim for benefits on July 15, 2010, requesting "workers compensation coverage for his heart disease . . . pursuant to the Virginia Workers' Compensation Act Section 65.2-402" and/or as an occupational disease medically communicated on April 22, 2010. Claimant later withdrew his filing and then re-filed it on January 25, 2012. The claim requested a lifetime award of medical benefits and payment of medical bills.

At the hearing before the deputy commissioner, the City defended against claimant's claim for medical benefits on the grounds that claimant was not entitled to the presumption set forth in Code § 65.2-402(B) because he had been retired since 2009 for knee-related disability and had not sustained a disability as a result of his heart condition. The deputy commissioner denied claimant's claim, holding that "there was no allegation of disability, no lost wages, or no lost time from work," but "only" a claim for "a medical award for treatment of heart disease" and finding "under these circumstances . . . the presumption of [Code § 65.2-402(B)] is not applicable." App. at 145. The deputy commissioner noted that "the medical evidence is in contrast" and that claimant "failed to sustain his burden of proving, by clear and convincing

- 4 -

evidence, that his coronary artery disease [was] a compensable ordinary disease of life." App. at 147.

Claimant timely appealed the deputy commissioner's finding to the full commission, which subsequently affirmed the deputy commissioner. The full commission held that "the deputy commissioner properly held that the presumption of . . . Code § 65.2-402(B) did not apply." In so holding, the full commission noted that claimant did not allege or seek wage loss benefits, only a medical award, that he continued to receive VRS and Social Security benefits post-retirement due to his total disability from his knee injury, and therefore, claimant's diagnosed heart condition did not affect his ability to earn wages and did not cause wage loss. Indeed, claimant agreed that he did not lose any wages as a result of his hospitalization or treatment for his heart condition. Claimant testified before the deputy commissioner that he continued to perform his duties as legislative director while receiving treatment for his heart condition, except for his days of hospitalization, which he "just took off [work]."

The full commission finally noted that because claimant did not appeal the deputy commissioner's finding that "[claimant's] heart disease [was] an ordinary disease of life and found that [claimant] failed to prove a compensable disease[,]" that finding was final. This appeal followed.

## II. Analysis

The fundamental purpose of the Workers' Compensation Act is to compensate employees for injuries "arising out of and in the course of employment . . . without regard to fault." Lawrence J. Pascal, Virginia Workers' Compensation: Law & Practice 1-7 (4th ed. 2011). "'It is as essential to industry as it is to labor.'" Id. (quoting Feitig v. Chalkley, 185 Va. 96, 38 S.E.2d 73 (1946)). The Act "was enacted for the purpose of attaining a humanitarian and beneficent purpose and, although in derogation of the common law, was highly remedial and to

be liberally construed in favor of the workman." Id. (citing Gobble v. Clinch Valley Lumber Co., 141 Va. 303, 127 S.E. 175 (1925)). What is often lost in the discussion as to why the Act must be interpreted liberally in favor of the employee is that the remedy provided by the Act is in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease. Significantly, any employer who pays the premium or compensation provided by law shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease to an employee. However, "liberality of construction did not authorize the amendment, alteration or extension of the Act nor does it require that every claim asserted be allowed." Id. (citing Humphries v. Newport News Shipbuilding & Dry Dock Co., 183 Va. 466, 32 S.E.2d 689 (1945)).

On appeal, we view the evidence in the light most favorable to the City, which prevailed before the commission. Allen & Rocks, Inc. v. Briggs, 28 Va. App. 662, 672, 508 S.E.2d 335, 340 (1998) (citing Amoco Foam Products Co. v. Johnson, 26 Va. App. 267, 272, 494 S.E.2d 169, 172 (1997)). "'Decisions of the commission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court.'" Id. at 673, 508 S.E.2d at 340 (quoting WLR Foods v. Cardosa, 26 Va. App. 220, 230, 494 S.E.2d 147, 152 (1997)). "'The fact that there is contrary evidence in the record is of no consequence.'" Id. (quoting Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991)).

Code § 65.2-402(B) provides, in relevant part:

> Hypertension or heart disease causing the death of, or any health condition or impairment resulting in total or partial disability of (i) salaried or volunteer firefighters, . . . shall be presumed to be occupational diseases, suffered in the line of duty, that are covered by this title unless such presumption is overcome by a preponderance of competent evidence to the contrary.

"Code [§ 65.2-402(B)] sets forth a rebuttable presumption that, absent a preponderance of competent evidence to the contrary, a causal connection exists between an individual's

employment as a salaried fire fighter and certain diseases." Fairfax Cnty. Fire & Rescue Dep't v. Mitchell, 14 Va. App. 1033, 1035, 421 S.E.2d 668, 669-70 (1992) (decided under former Code § 65.1-47.1). "[Code § 65.2-402] has long been recognized as a remedial statute, enacted by the legislature to overcome the difficulty that a firefighter would otherwise have in proving causation." City of Norfolk v. Lillard, 15 Va. App. 424, 430, 424 S.E.2d 243, 247 (1992). "In order to establish a *prima facie* case, the claimant need only prove his occupation and his disability from one of the diseases identified by the statute. The presumption shifts the burden of going forward with the evidence from the claimant to his employer." Fairfax Cnty, 14 Va. App. at 1035, 421 S.E.2d at 670 (citing Page v. City of Richmond, 218 Va. 844, 241 S.E.2d 775 (1978)). "Disability" is not defined in Code § 65.2-402. Claimant contends that he need only prove a medical or physical disability for the presumption to apply, whereas the City contends he must also prove a loss of earnings.

We find the unpublished case Lussen v. City of Roanoke Fire & EMS, No. 1705-03-3, 2003 Va. App. LEXIS 652 (Va. Ct. App. Dec. 16, 2003), instructive.[2] In Lussen, the claimant firefighter underwent an EKG on January 26, 2001, the results of which his physician, Dr. Berdeen, interpreted as abnormal. Id. at *2. As a result, Dr. Berdeen removed him from firefighting duties, assigned him to desk duties, and referred him to Dr. Bushkar for further testing. Id. Dr. Bushkar evaluated claimant and interpreted the same EKG results on January 29, 2001, finding that claimant may have "had an infarct about six months ago." Id. at *3. After additional testing, Dr. Bushkar cleared claimant "without restriction to return to work." Claimant returned to full duty work as a firefighter on February 2, 2001. Id. at *3. In a letter dated October 22, 2002, Dr. Berdeen clarified that his decision to assign claimant to office duty

---

[2] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." Otey v. Commonwealth, 61 Va. App. 346, 350, 735 S.E.2d 255, 257 (2012) (citing Rule 5A:1(f)).

pending Dr. Bushkar's evaluation was a "precautionary measure" and "in no way indicate[d] a state of disability." Id. at *2. Claimant never missed time from work, never took sick leave or extended illness leave, and he did not lose any wages. Id.

The deputy commissioner dismissed the claim, finding no evidence of disability. Id. at *4. The full commission, upon review, affirmed the deputy's decision that claimant failed to prove he had suffered a disability. Id. On appeal to the Court, claimant argued that he was not required to establish a loss of wages to invoke the presumption under Code § 65.2-402(B) and that his inability to fight fires for a week and restriction to light duty constituted a "partial disability." Id. at *8-9. The Court affirmed the commission and in so holding, stated:

> Under the terms of Code § 65.2-402, in order for the presumption to apply and to result in an award, a covered claimant must prove the disease and a resulting disability. The rebuttable presumption created by this statute establishes a causal relationship between *the disease* and a claimant's *employment*. See Bass v. City of Richmond Police Dep't, 258 Va. 103, 112, 515 S.E.2d 557, 561 (1999). By its language, the statute does not establish a presumption that a *disability* arose from the *disease*. See Code § 65.2-402(B) (noting that an employee's heart disease must be proved to cause or result in death, total disability, or partial disability, before the presumption applies).

Id. at *7. The Court further defined the difference between establishing a disease and establishing a disability arising from the disease:

> "The key to the understanding of this problem is the recognition, at the outset, that the disability concept is a blend of two ingredients, whose recurrence in different proportions give rise to most controversial disability questions: the first ingredient is disability in the medical or physical sense, as evidenced by obvious loss of members or by medical testimony that the claimant simply cannot make the necessary muscular movements and exertions; the second ingredient is de facto inability to earn wages, as evidenced by proof that claimant has not in fact earned anything."

Id. at *7-8 (quoting Larson's Workmen's Compensation Law vol. 2, § 57.10 (now § 80.02)).

The Court relied upon evidence showing that Dr. Berdeen clarified that claimant's office duty

restriction was not indicative of a "disability," claimant did not miss any work or suffer lost wages, but rather remained on office duty at full pay, and Dr. Bushkar found no evidence of any abnormalities upon additional testing to affirm the commission's determination. Id. at *9-10. The Court therefore held that the commission did not err in finding that claimant failed to prove a disability from his physical ailment and, therefore, he was not entitled to the presumption under Code § 65.2-402(B). Id. at *10.

The Court's holding in Lussen reflected this Court's previous interpretations of "disability" pursuant to Code § 65.2-402(B). For example, in Tomes v. James City Fire, 39 Va. App. 424, 573 S.E.2d 312 (2002), the Court noted that "[d]isability from a disease has been defined as the stage when the disease prevents the employee from performing his work efficiently." Id. at 431-32, 573 S.E.2d at 316 (citing Salyer v. Clinchfield Coal Corp., 191 Va. 331, 338, 61 S.E.2d 16, 20 (1950)). In Tomes, we affirmed the commission's finding that claimant failed to establish that his condition "rendered him totally or partially disabled" because he did not miss any work or seek lost earnings as a result of his respiratory disease diagnosis. Id. at 432, 573 S.E.2d at 316. Consequently, the commission did not err in holding that the presumption in Code § 65.2-402 had no application. Id.

Similarly, in Delaney v. City of Fairfax Fire & Rescue, No. 1588-93-4, 1994 Va. App. LEXIS 336 (Va. Ct. App. May 31, 1994), the Court held that "[a] disability is a physical or mental incapacity from an injury or disease that prevents a claimant from earning equivalent wages at his previous or otherwise similar employment." Id. at *5 (citing Arthur Larson, The Law of Workmen's Compensation § 57 (1994)). In Delaney, the claimant suffered from an arrhythmia, which caused him to miss one day of work for which he was paid. Id. at *1-2. He was later diagnosed with a rapid heartbeat for a short duration but with no "significant heart disease for the future." Id. at *2. The Court affirmed the commission's holding that the

presumption in Code § 65.2-402 did not apply because there was no evidence that claimant was totally or partially disabled from performing his work as a firefighter other than for thirty minutes of temporary arrhythmia, and claimant did not lose any earnings as a result. Id. at *5-6.

The facts of this case are strikingly similar to those in Lussen and Delaney: Claimant was diagnosed with heart disease and hospitalized for three days. The medical evidence revealed that claimant's three treating doctors agreed on his diagnosis and that he suffered from multiple risk factors, his former occupation as a firefighter potentially being one of them. The evidence conflicted, however, as to the extent of claimant's disability from his heart condition, if any. In response to one questionnaire, Dr. Valentine stated that claimant was discharged from Lynchburg General Hospital with instructions to remain on no work activity until following up with a cardiologist and that he was not fully cleared for full activity until May 17, 2010. However in response to another questionnaire, Dr. Valentine agreed that he "never advised [claimant] to stop work, nor did [he] place any restrictions on [claimant] based upon [his] diagnosis of mild to moderate coronary disease." Additionally, Dr. Williams agreed that claimant was "temporarily totally disabled" from April 22 through April 24, 2010. Then again, similar to how Lussen worked office duties while undergoing treatment, claimant testified that when he took off work from his job as legislative director, he did not lose any pay while hospitalized and undergoing treatment.

Based on the record, it is clear that claimant did not introduce any evidence that tended to show his entitlement to economic indemnity for the period of his hospitalization or afterwards. In other words, claimant did not demonstrate the second component necessary for the presumption to apply: That a *disability* arose from his disease, as evidenced by a "de facto inability to earn wages." See Lussen, 2003 Va. App. LEXIS 652, at *7; Larson's Workmen's Compensation Law Vol. 2, § 57.10 [now § 80.02]. We hold that a claimant must show

- 10 -

entitlement to some form of economic indemnity,[3] not necessarily actual lost wages, for the

presumption set forth in Code § 65.2-402 to apply. Though the most common and efficient

method of proof, we do not hold that a claimant must prove actual lost wages to show he

suffered a disability from a medical condition. Rather, a claimant must show an entitlement to

some form of economic indemnity or restoration. Absent a showing of actual lost wages, a

claimant could prove such entitlement through evidence of the loss of his earning capacity or

opportunity. However, much like Lussen and Delaney, this is not a case where claimant's

diagnosis affected his ability to perform duties as legislative director. Claimant did not introduce

testimony from a vocational counselor or his employer as to the duties of his job and how his

current or future restrictions affected his ability to perform those duties and maintain his

pre-diagnosis earning capacity. While claimant provided evidence that he was *physically*

incapacitated for the three days he was hospitalized, he did not demonstrate any entitlement to

economic indemnity for his physical incapacitation. Thus, we hold that the commission did not

err in finding that claimant failed to prove he suffered from a "disability" as a result of his heart

disease and, therefore, the presumption in Code § 65.2-402 did not apply.

Absent application of the presumption provided in Code § 65.2-402, claimant could only

recover medical benefits if he proved that his coronary artery disease constituted an occupational

disease[4] covered by the Act, which he failed to do. See Code § 65.2-403(B) ("An employee who

---

[3] "Indemnity" as used in this context means, "The right of an injured party to claim reimbursement for its loss, damage, or liability from a person who has such a duty." Black's Law Dictionary 837 (9th ed. 2009).

[4] Code § 65.2-400 defines an "occupational disease" as a "disease arising out of and in the course of employment, but not an ordinary disease of life to which the general public is exposed outside of the employment." A claimant might recover benefits for an "ordinary disease of life" pursuant to Code § 65.2-401, if he proves by clear and convincing evidence:

    1. That the disease exists and arose out of and in the course of employment as provided in § 65.2-400 with respect to occupational

has an occupational disease that is covered by this title shall be entitled to the same hospital, medical and miscellaneous benefits as an employee who has a compensable injury by accident . . . ."). Unlike Code § 65.2-402, a claimant's entitlement to medical benefits pursuant to Code § 65.2-403(B) does not require a claimant to prove that he suffered a disability as a result of his occupational disease. See Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 75, 577 S.E.2d 538, 541 (2003) ("Nothing in Code § 65.2-403(B) requires that the occupational disease qualify for permanent loss or disability compensation before medical benefits may be awarded. Under Code § 65.2-403(B), the sole inquiry is whether the disease qualifies as an 'occupational disease that is covered by this title' if so, medical benefits may be awarded."); see also Jones v. E.I. Dupont de Nemours & Co., 24 Va. App. 36, 39, 480 S.E.2d 129, 130 (1997) ("Whether a permanent loss compensable under Code § 65.2-503 accompanies the [occupational] disease has no impact upon an award [of medical benefits] under Code § 65.2-403."). Under Code § 65.2-403(B), a claimant need only prove that he suffers from an occupational disease to be entitled to medical benefits.

The deputy commissioner found that claimant "failed to sustain his burden of proving, by clear and convincing evidence, that his coronary artery disease is a compensable ordinary disease

---

diseases and did not result from causes outside of the employment, and

2. That one of the following exists:

a. It follows as an incident of occupational disease as defined in this title; or

b. It is an infectious or contagious disease contracted in the course of one's employment in a hospital or sanitarium or laboratory or nursing home as defined in § 32.1-123, or while otherwise engaged in the direct delivery of health care, or in the course of employment as emergency rescue personnel and those volunteer emergency rescue personnel referred to in § 65.2-101; or

c. It is characteristic of the employment and was caused by conditions peculiar to such employment.

- 12 -

of life." Claimant did not request review of that finding and, therefore, the deputy commissioner's determination is final. Consequently, claimant failed to prove any entitlement to medical benefits pursuant to either Code § 65.2-402 or Code § 65.2-403(B).

For these reasons, we hold that the commission did not err in determining that the presumption in Code § 65.2-402 did not apply and that claimant was not entitled to an award of medical benefits.

Affirmed.