# Richmond

## SKY CHEFS, INCORPORATED, ET. AL.

### v.

## MICHAEL ROGERS

December 4, 1981.

Record No. 801271.

Present: All the Justices.

*John O. Easton (Carr, Jordan, Coyne & Savits,* on brief), for appellants.

*Lawrence J. Pascal (Ashcraft & Gerel,* on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

The claimant, appellee Michael Rogers, sustained an industrial injury on May 8, 1978, which arose out of and in the course of his employment. He fell while on a commercial aircraft at National Airport. At the time, the claimant, whose job title was "caterer," was working as a truck driver for his employer, appellant Sky Chefs, Incorporated, and placing containers of food weighing 85 to 100 pounds aboard the plane to provide "fresh" meals for passengers. The employer's insurer, appellant Travelers Indemnity Company, initially accepted the claim as compensable. Rogers was paid compensation for total work incapacity and necessary medical care beginning May 9, 1978, through December 20, 1979.

On the latter date, the employer and insurer (hereinafter collectively referred to as "employer") filed in the Industrial Commission a Notice of Application For Hearing alleging a change of condition. *See* Code § 65.1-99. According to the application, Rogers was able to return to his regular employment on November 27, 1979.

A hearing on the application was held at Fairfax in March of 1980 before a deputy commissioner, who found, in a May 1980

opinion, that the employer had failed to carry its burden of proof. The full Commission, upon review, affirmed the deputy's decision in July of 1980 and denied the employer's application.

On appeal, the employer contends the evidence was uncontradicted that the claimant was able to return to his regular duties on November 27, 1979, and asserts the Commission erred in holding to the contrary. An essential part of the employer's argument is the claim that the Commission erred in considering records dealing with Rogers' medical condition subsequent to January 19, 1980, the date claimant again fell after he had resumed his regular employment two weeks earlier.

In the May 1978 fall, the claimant received a head injury, diagnosed as "a mild concussion," and injury of "some degree" to his entire left side. Following a brief period of hospitalization, claimant was examined numerous times during the next 22 months in Northern Virginia and in the District of Columbia by various physicians and at a number of hospitals.

Within a week of the accident one neurosurgeon reported Rogers had "fully recovered" from the concussion and "was neurologically normal." Nevertheless, over the ensuing months, the claimant continued to complain of intermittent pain, numbness, and weakness in the whole left side of his body. He was unable to lift heavy objects. He also experienced dizzy spells, headaches, and "occasional attacks" when he could not walk.

The physicians were unable to make any objective physical findings to explain claimant's subjective complaints. Within three months of the accident, the attending physician reported Rogers' condition was "functional in nature."

During the 22-month period, Rogers was treated with various medications and by physical therapy. At times, claimant was advised either that he could return to light work or that he could resume the full duties of his pre-injury occupation. Yet the symptoms persisted and Rogers did not resume his regular duties with the employer until January of 1980.

In support of its application, the employer relied on the opinion of claimant's attending physician, a neurosurgeon, who reported on December 10, 1979, in part:

"I found [upon an examination on November 27, 1979] no objective medical evidence of disease or injury to the spine or the peripheral nerves. I found no objective medical evidence

of any neuromuscular condition which would prevent him from returning to his regular duties.

"I talked to the patient about going back to work at his regular job. He states that he feels he cannot take the risks involved and must look after himself.

"Mr. Rogers requires no further neurosurgical care at this time."

After the application was filed on December 20 and before the March 1980 hearing, the claimant returned to work for the employer on January 4 and performed his regular duties until January 19. Rogers testified that during the 15-day period he was "hurting" and "aching quite a bit" on his left side but he continued working. Then, on January 19, Rogers was walking to a plane lifting a food container when he "just went numb and fell." Subsequently, he was hospitalized for about a week. His condition was diagnosed as "[f]unctional anesthesia left lower extremity," according to a physician's report dated January 21, 1980.

The claimant was examined in February of 1980 by the physician who attended him for the May 1978 episode. The doctor reported on February 22 that since the 1978 accident Rogers "has had periods or spells where the feeling would leave his left side." The physician concluded the report as follows:

"My impression is that we are most probably dealing with a form of conversion reaction which may be related to anxiety and depression. I frankly doubt that there is an organic neurological basis for this complaint, especially a complaint of numbness which comes and goes with such frequency.

"I recommended, however, that the patient have a CT scan performed to give us further evaluation of the anatomical situation of the brain. In addition, I felt that a psychological evaluation was definitely a proper approach. The patient might well benefit from anti-depressant medication.

"I do not have any further information to add from the neurosurgical or neurological standpoint."

That report was filed with the Commission 15 days before the hearing.

At the beginning of the hearing, counsel for the claimant, referring to the January 19 incident, said that "it's either a new accident or it flows out of the original [1978] industrial accident."

Counsel for the employer and insurer took the position that the "carrier is not prepared at this time to go forward based upon a claim of a new accident." Accordingly, the deputy commissioner stated that the hearing would be confined to consideration of the question whether there had been a change in Rogers' condition and would not encompass any claim of a new accident on January 19.

In his opinion denying the employer's application, the hearing commissioner stated he was not "persuaded that the claimant was able to return to his regular work loading and unloading heavy food carriers from airplanes on November 27, 1979." Noting the claimant "did subsequently attempt work for a short period of time in January," the commissioner found that Rogers' "functional inability to continue to perform his food handling duties (associated with his persistent symptoms of periodic numbness, pain and swelling) casts doubt upon" the employer's assertion that the claimant was able to return to his former employment on the date in question. The commissioner further stated:

> "Although it appears that the claimant's symptoms are in all likelihood associated with a hysterical conversion reaction, the claim was initially accepted as compensable by the [employer] and the evidence does not now establish that this condition did not arise from the industrial accident. The record does not contain the opinion of a psychologist on this issue. The Industrial Commission cannot substitute its opinion for that of a competent psychologist or psychiatrist, and in the absence of persuasive evidence we cannot find that the claimant's condition has improved to the point that he is fully capable of performing the duties of his pre-injury employment."

Upon review, the full Commission adopted those findings.

In arguing on appeal that the evidence was sufficient to sustain its burden of proving change of condition, the employer points to pre-1980 medical reports stating that Rogers was capable of returning to his regular employment. Also, the employer says "[t]here can be no question of the claimant's ability to return to work in light of his testimony that he did in fact return to work on January 4, 1980." In addition, the employer argues that "[e]ven though the Deputy Commissioner specifically ruled that no claim

by Mr. Rogers for disability resulting from the January 19, 1980 injury would be heard, he based his Opinion upon medical reports which specifically related to Mr. Rogers' medical condition after and as a result of the January 19, 1980 'injury'."

As we have repeatedly noted, the Commission's findings of fact when based upon credible evidence are conclusive and binding upon us. Code § 65.1-98; *Fairfax Hospital* v. *DeLaFleur,* 221 Va. 406, 410, 270 S.E.2d 720, 722 (1980). The question presented here is whether there is credible evidence in the record to support the Commission's finding that the employer failed to establish by a preponderance of the evidence its allegation that Rogers, on November 27, 1979, was able fully to perform the duties of his preinjury employment. *See Virginia Oak Flooring Co.* v. *Chrisley,* 195 Va. 850, 852, 80 S.E.2d 537, 538 (1954).

First, we address, and reject, the employer's contention that post-January 19, 1980 medical evidence should have been disregarded by the Commission. The 1980 medical reports to which we have referred had been filed prior to the hearing and the employer knew or should have known of their contents. Those reports, contrary to the employer's argument, merely demonstrated a continuation of the claimant's functional disability that earlier had been noted within three months of the May 1978 accident; they did not relate only to a new condition that became manifest for the first time after the January 19, 1980 episode, as the employer contends.

Second, we hold the record supports the Commission's rejection of the employer's application. The January 1980 episode occurred without direct external stimulus; it was spontaneous, happening when the claimant "just went numb and fell." Manifestly, the Commission concluded that the 1980 incident was merely indicative of Rogers' physical condition and functional disability as it had existed from shortly after the May 1978 accident, through November of 1979, and including the first three months of 1980. Indeed, the hearing commissioner pointed out that the claimant's "functional inability" to continue to perform his regular duties during January of 1980 "casts doubt" upon the employer's allegation that Rogers was able to return to his former employment on November 27, 1979. *Compare Burlington Mills Corp.* v. *Hagood,* 177 Va. 204, 13 S.E.2d 291 (1941), *and Womack, Inc.* v. *Ellis,* 209 Va. 588, 166 S.E.2d 265 (1969), *with*

*Keller Manufacturing Co.* v. *Hoke,* 215 Va. 525, 211 S.E.2d 82 (1975).

For the foregoing reasons, the award appealed from will be

*Affirmed.*