## Richmond

CHARLES CURTIS COOK

v.

CITY OF WAYNESBORO POLICE DEPARTMENT, ET AL.

Record No. 820214.

CITY OF WAYNESBORO POLICE DEPARTMENT, ET AL.

v.

CHARLES CURTIS COOK

Record No. 820215.

March 11, 1983.

Present: Carrico, C.J., Cochran, Poff, Compton, Thompson,*
Stephenson, and Russell, JJ.

---

\* Justice Thompson participated in the hearing and decision of this case prior to the effective date of his retirement on March 2, 1983.

*Daniel Schorsch (Gordon W. Poindexter, Jr.; Cooley & Poindexter,* on briefs), for appellant. (Record No. 820214.)

*M. Bruce Wallinger (Wharton, Aldhizer & Weaver,* on brief), for appellees. (Record No. 820214.)

*M. Bruce Wallinger (Wharton, Aldhizer & Weaver,* on briefs), for appellants. (Record No. 820215.)

*Daniel Schorsch (Gordon W. Poindexter, Jr.; Cooley & Poindexter,* on brief), for appellee. (Record No. 820215.)

CARRICO, C.J., delivered the opinion of the Court.

This case involves two decisions of the Industrial Commission involving the same employee, Charles Curtis Cook (Cook), and his employer, the City of Waynesboro Police Department (the Department). Cook appeals a decision denying him benefits for a heart condition he claims is work-related (Record No. 820214). The Department appeals a decision awarding Cook compensation for a change in condition of a 1977 injury he suffered in a work-connected accident (Record No. 820215).

The record shows that Cook was hired as a patrolman by the Department on January 17, 1966, when he was twenty-three years old. In connection with his hiring, Cook was examined by a physician designated by the Department and found free of heart disease and generally physically fit. Each year thereafter until 1977, Cook was examined by the designated physician and similarly found fit for duty.

On January 11, 1977, Cook was kicked in the neck by an unruly prisoner, causing a contusion of the officer's larynx and a fracture of his thyroid cartilage. As a result, Cook was disabled from work, and he and the Department's insurance carrier entered into an "Agreement as to Compensation." The agreement was submitted to the Commission, which awarded Cook compensation of $135.20 per week, plus medical benefits.

Cook remained away from work for approximately seventeen months. During this period, he sought treatment for his injuries from a variety of health care providers, including physicians in Waynesboro and Charlottesville, two hospitals in the latter city, and the Pain Clinic at the University of Virginia Medical Center.

The treatment of Cook's neck injuries was complicated by the heart condition which is the subject of his appeal. This condition, known as Wolff-Parkinson-White Syndrome, was diagnosed in Cook through an electrocardiogram administered while he was hospitalized for a stomach ailment during the late summer of 1975.

Wolff-Parkinson-White Syndrome is a heart disorder involving an additional pathway between the atria and the ventricles of the heart. The condition manifests itself by "sudden episodes of very rapid cardiac rhythms," resulting in weakness, occasional chest pain, and dizziness; the disease is controllable by the administration of drugs.

In the report of his 1977 examination of Cook, conducted after the neck injury episode, the Department's physician noted the

presence of Wolff-Parkinson-White Syndrome in Cook. The doctor stated that the disorder was "controlled," and he expressed the opinion that Cook could return to duty after he was released from treatment for his neck injury.

On May 12, 1978, Dr. Thomas L. Gorsuch, Cook's attending physician, reported that Cook was "able to return to regular work." On June 6, Cook resumed his duties as a police officer, and his compensation benefits were terminated.

Cook continued to work until September 10, 1979; he has not returned to duty since. He stopped working on that date because of persistent pain in his neck, shoulders, and arms, combined with two episodes of "blacking out" he experienced while on duty. He attributed the pain to his 1977 neck injury and the blackout spells to his heart condition.

After Cook stopped work, Dr. Gorsuch referred him to the Duke University Medical Center. Cook was also examined by Dr. C. Robert Showalter, a Harrisonburg psychiatrist.

### Cook's Heart Disease Claim

■ With respect to this claim, Cook cites the provisions of Code § 65.1-47.1. So far as pertinent here, this Code section provides that "any condition or impairment of health" of a policeman caused by heart disease resulting in disability shall be presumed to be an occupational disease "unless the contrary be shown by a preponderance of competent evidence."

■ In ruling upon Cook's heart disease claim, the Commission held that, while Cook was entitled to the benefit of the statutory presumption, the Department had rebutted the presumption. Cook contends this holding was error.

Cook advances two arguments. The first involves the findings of the deputy commissioner who heard the heart disease claim initially. The deputy commissioner denied the claim, holding that Cook was not entitled to the statutory presumption because he had not shown he was free of heart disease "at all points in time before the filing of the claim." In the course of his opinion, the deputy commissioner made a finding that Cook stresses in his present argument; the deputy commissioner stated that the cause of Wolff-Parkinson-White Syndrome is "unknown."

Upon Cook's request, the full Commission reviewed the deputy commissioner's denial of the heart disease claim. The Commission remanded the matter to the deputy commissioner for the reception

of additional evidence and the making of new findings, including a determination, if possible, of the cause of Cook's heart disease. Upon remand, the deputy commissioner held that Cook was entitled to the statutory presumption and to compensation for his heart disease; however, the deputy commissioner did not discuss the cause of the disease. Upon the Department's request, the full Commission reviewed the deputy commissioner's holding and reversed on the basis, as noted previously, that the Department had rebutted the statutory presumption.

Cook now argues that, because the Department did not appeal the deputy commissioner's initial "unknown cause" finding, the finding became final and constituted the law of the case. In the face of this finding, Cook asserts, it was error as a matter of law for the Commission to rule that the statutory presumption had been rebutted.

We disagree with Cook. We addressed a similar question in *Mace v. Merchants Delivery,* 221 Va. 401, 270 S.E.2d 717 (1980). There, we held that "[a] single award may not be segmented into component parts" and that "[a]n appeal of a deputy commissioner's award empowers the Industrial Commission to re-examine all of the deputy commissioner's conclusions." 221 Va. at 404 n.3, 270 S.E.2d at 719 n.3.

Cook attempts to distinguish *Mace,* but his argument is convoluted and unconvincing. We hold that the decision is applicable here and is dispositive of Cook's contention that the deputy commissioner's "unknown cause" finding constituted the law of the case.

■ This brings us to Cook's argument that the Commission erred when it ruled the Department had rebutted the statutory presumption. In this connection, we have held that "to rebut the statutory presumption the employer must adduce competent medical evidence of a non-work-related cause of the disabling disease . . . ." *Page v. City of Richmond,* 218 Va. 844, 848, 241 S.E.2d 775, 777 (1978); *see also Berry v. County of Henrico,* 219 Va. 259, 265, 247 S.E.2d 389, 392 (1978); *Fairfax Fire Serv. v. Newman,* 222 Va. 535, 539, 281 S.E.2d 897, 900 (1981); *Amherst County v. Brockman,* 224 Va. 391, 398-399, 297 S.E.2d 805, 809 (1982).

■ Here, in its effort to rebut the statutory presumption, the Department introduced the report of Dr. George A. Roussel, IV, a Harrisonburg physician who evaluated the reports of Cook's ex-

amination at Duke University Medical Center. In his report, Dr. Roussel stated:

> Wolff-Parkinson-White Syndrome . . . is a condition generally thought to be congenital in nature in which the patient has an additional or accessory pathway leading from the atria to the ventricles of the heart. . . .
>
> . . . .
>
> In my experience I have never read of a case or seen an individual whose condition was brought on by stress or was in any way related [to stress], as this condition is generally thought to be a congenital anomaly which is often cured by severing that accessory pathway at operation.

Cook argues that this report "cannot be given any special weight" because Dr. Roussel's qualifications were not established. The failure, however, to establish the qualifications of an expert goes to the admissibility of the expert's opinion, and Cook did not object to Dr. Roussel's report when it was introduced below. Hence, we will not notice the objection now. Rule 5:21. Whether the report was entitled to "any special weight" was a matter for the Commission to decide.

Cook also maintains that Dr. Roussel's report is insufficient to rebut the statutory presumption because the phrase "generally thought" is equivocal; it leaves doubt concerning the origin of Wolff-Parkinson-White Syndrome and fails to specify who believes the disease is congenital. We think, however, that the Commission could properly construe the "generally thought" language as a positive statement of belief. We think further that the Commission could fairly infer that the belief was held generally by those in the medical discipline conversant with Wolff-Parkinson-White Syndrome.

The Department also introduced the following excerpt from a medical treatise which deals with diseases of the cardiovascular system:

> The term Wolff-Parkinson-White syndrome is appropriate especially when recurrent paroxysmal tachycardia is associated with the electrocardiographic abnormality. A congenital defect in [atrioventricular] conduction is probably present in all cases and a familial incidence has been observed. . . .

The syndrome is more common in males than in females and may be present at any age.

Cook submits that the foregoing statement is insufficient to rebut the statutory presumption because the word "probably," used with reference to the presence of congenital defect, connotes nothing more than supposition or speculation. We disagree. A statement that a certain condition is probably present means there is reasonable likelihood of the condition's existence, and this is sufficient to permit a trier of fact to accord the statement probative weight.

■ We conclude that the information adduced by the Department in the form of Dr. Roussel's report and the excerpt from the medical treatise constitutes "competent medical evidence of a non-work-related cause of [Cook's Wolff-Parkinson-White Syndrome]," within the meaning of the *Page* test, 218 Va. at 848, 241 S.E.2d at 777. Hence, the Commission did not err in ruling that the Department had rebutted the presumption established by Code § 65.1-47.1. Because Cook relied solely upon the statutory presumption and presented no evidence that his heart disease was in fact work-related, the Commission properly denied him compensation for his heart disease claim.

### Cook's Change-in-Condition Claim

Concerning this phase of the case, the Department argues along these lines: The burden was upon Cook to prove "that he again became disabled as a natural and unavoidable result of the accident which occurred on January 11, 1977"; this burden required him to establish a causal connection between the 1977 accident and his condition on and after his last day of work on September 10, 1979.

Continuing with its argument, the Department maintains that Cook failed in his burden. He had recovered from his 1977 injuries when he returned to work in June, 1978, and thereafter he required no treatment for these injuries. He suffered from Wolff-Parkinson-White Syndrome and was troubled with severe, chronic anxiety neurosis even before the 1977 accident; after he stopped work in 1979, he exhibited the symptoms associated with those ailments. Under these circumstances, the finding is compelled that Cook's 1979 condition was not due to the 1977 accident.

■ We do not agree with the Department. While the Department is able to point out certain excerpts from the record which might tend to support its position, it is our duty to determine whether credible evidence supports the Commission's finding that a change in Cook's condition did occur and, if such evidence exists, to sustain the finding. Code § 65.1-98; *Sky Chefs, Inc.* v. *Rogers,* 222 Va. 800, 805, 284 S.E.2d 605, 607 (1981).

■ The record shows that, in a letter dated October 9, 1979, approximately one month after Cook's last day of work, his attending physician, Dr. Gorsuch, referred him to the Duke University Medical Center for "help" in treating the effects of his 1977 injury. The doctor added that Cook had returned to work "[f]or a time," but "recently [had] begun having dizziness and headaches again . . . ."

Cook's discharge summary from the Duke Medical Center, dated March 5, 1980, stated that "[d]uring his stay, Mr. Cook was troubled by pain in his upper left arm and neck. . . . It may be significant that during his stay he required injections of Demerol at night in order to get relief from this discomfort."

In a report dated April 18, 1980, Dr. Gorsuch stated that he had followed Cook "for some years for two major problems, the first being the Wolff-Parkinson-White syndrome . . . and the second being pain and stiffness in the neck and shoulder following an injury on January 11, 1977." The doctor stated further that Cook "continues to complain of severe dizziness and weakness, numbness and tingling in the extremeties . . . ." Dr. Gorsuch said that he was unable "to explain these but certainly in his present state, [Cook] is not capable of performing as a police officer."

In another report dated May 22, 1980, Dr. Gorsuch stated that "at present [Cook] is disabled from a number of problems, which include results of trauma to the neck, severe emotional disorder which I would label as a depressive reaction,** and the Wolff-Parkinson-White syndrome [which] is now well controlled." Finally, in a letter dated October 3, 1980, Dr. Gorsuch said "[t]here is no doubt that much of [Cook's] discomfort in the neck and much of his dizziness is related to his [neck] injury [,] some of it almost certainly is related to the Wolff-Parkinson-White syndrome [and] some of it is bonafide depressive reaction."

** C. Robert Showalter, M.D., the Harrisonburg psychiatrist who examined Cook, stated in a report dated July 24, 1981, that Cook's emotional disorder was a result of his 1977 neck injury.

We believe this evidence furnishes ample support for the Commission's change-in-condition finding. Hence, it was not error for the Commission to award Cook compensation for his change-in-condition claim.

Finding that the Commission correctly denied Cook's heart disease claim and properly awarded him compensation for a change in condition, we will affirm both decisions.

*Affirmed.*