## Richmond

DAIRYMEN/FLAV-O-RICH, INC., ET AL.

V.

HAROLD ERVIN SHAFFER

March 11, 1983.

Record No. 820570.

Present: Carrico, C.J., Cochran, Poff, Compton, Thompson,*
Stephenson, and Russell, JJ.

* Justice Thompson prepared and the court adopted the opinion in this case prior to the effective date of his retirement on March 2, 1983.

*James C. Joyce, Jr.; Melissa J. Warner (Gentry, Locke, Rakes & Moore, on brief), for appellants.*
*S. Strother Smith, III, for appellee.*

THOMPSON, J., delivered the opinion of the Court.

In this appeal, we must determine whether the Industrial Commission erred in reinstating workmen's compensation benefits previously awarded to Harold Ervin Shaffer (Claimant).

On July 22, 1980, Claimant sustained injury to his right side, neck, and head when he fell from the top of a milk tanker truck in the course of his employment with Dairymen/Flav-O-Rich, Inc. (Employer). The initial diagnosis was "contusion right shoulder, mild concussion", which was causally related to his fall. After a memorandum of agreement was executed by the parties, the Commission entered an award on September 9, 1980, entitling Shaffer to temporary total disability benefits commencing August 14, 1980.

After the accident, Claimant was seen and treated by numerous physicians, including a clinical psychologist and a psychiatrist. In late October, 1980, Dr. Anthony H. Robinson, the psychiatrist, began treating Claimant. After the initial examination, Dr. Robinson noted "depressive neurosis" as his diagnosis and prescribed medication and further treatment for depression.

On January 28, 1981, Dr. Robinson reported that Claimant was still suffering from anxiety and depression related to the injury, but added that Claimant was showing improvement and possibly could return to work in several weeks. Then, on February 10, 1981, Dr. Robinson released Claimant to return to work on February 18, 1981.

Claimant began working again on March 17, 1981, and continued through early June, 1981. In a letter dated June 5, 1981, Dr. Robinson stated that he had last seen Claimant on May 4, 1981. After noting that Claimant had already returned to work, the psychiatrist concluded:

It is impossible for me to predict how long he will need to be treated. However, I would expect he will need to be seen periodically in my office for at least the next year. His prognosis has improved, but with the level of problems he has experienced, I think his condition will remain chronic.

According to Claimant, when he finished work on Friday, June 5, 1981, he fully intended to return to work on Sunday for his next shift. On Sunday, however, Claimant called Employer's plant superintendent and explained that he was unable to come to work because, over the weekend, he had strained his back while lifting a tree limb. Several days later, Claimant came by the plant and signed the following statement which was typed on Employer's stationery and witnessed by the plant superintendent and two other employees:

To Whom It May Concern:
   I, Ervin Harold Shaffer, feeling that I am unable to continue my employment with [Employer] hereby tender my resignation, effective June 9, 1981. I feel that with my injury which was caused at my residence and my nervous condition, I cannot perform my natural work with the above mentioned company. This resignation is of my own free will and I was not pressured by [Employer] or its employees.

On June 26, 1981, Claimant, through his attorney, filed an application for hearing, alleging that he had returned to his original job in March, 1981, but was unable to continue and had stopped working in June, 1981.

At a hearing before a deputy commissioner on September 9, 1981, Claimant testified as to his nervous condition and his irritability at home and on the job since the industrial accident. He stated that after the fall his nerves "began to react more often"; that at times he would "explode . . . like a . . . temper . . . you can't control"; and that because he felt he was no longer able to do his job, he resigned. Claimant also described the non-work-related back injury, explaining that it had no effect upon his previous nervous condition. On September 14, 1981, the deputy commissioner ordered that benefits be resumed as of June 10, 1981. On February 26, 1982, the full Commission affirmed the reinstating of benefits.

■ Relying on *Mace* v. *Merchants Delivery*, 221 Va. 401, 270 S.E.2d 717 (1980), Employer asserts that the uncontradicted medical evidence indicated that Claimant was able to work. We disagree.

From our reading of the record, the instant case can be significantly distinguished from *Mace*. There, the attending physician concluded that Mace was capable of returning to unrestricted work and that further medical treatment was unnecessary. Dissatisfied with the diagnosis, Mace consulted two other physicians, neither of whom reached a conclusion in conflict with that of the original physician.

In affirming the Commission's termination of benefits, we said:

> In light of . . . [the attending physician's] unequivocal statement that Mace was fully able to return to unrestricted work *and the absence of any medical evidence to the contrary,* the Commission can only conclude [that] Mace was able to return to unrestricted work . . . . [Emphasis added.]

*Id.* at 403-404, 270 S.E.2d at 719.

Here, although Dr. Robinson had earlier opined that Claimant could return to work, after further examination of Claimant, he stated, in a subsequent medical report, that Claimant's condition would remain "chronic"[1] and that Claimant would remain under his care for at least another year. Thus, unlike *Mace,* there is medical evidence that the Claimant is incapable of returning to work. Also, there is the testimony of the Claimant himself as to his nervous condition resulting from the accident and inability to resume work.

■ The Commission, in its capacity as a fact finder, could properly conclude from the evidence that Claimant's disabling psychiatric condition directly resulted from the industrial accident and that in June, 1981, he remained unable to work. It is well settled that when, as here, the Commission makes findings of fact based on credible evidence, these are conclusive and binding upon us and not subject to our review. Code § 65.1-98; *Sky Chefs, Inc.* v. *Rogers,* 222 Va. 800, 805, 284 S.E.2d 605, 607 (1981). "Likewise, the Commission's conclusions upon conflicting inferences, legitimately drawn from proven facts, are equally binding on ap-

---

[1] *Dorland's Illustrated Medical Dictionary* at 268 (26th ed. 1981), defines "chronic" as "persisting over a long period of time."

peal." *Watkins* v. *Halco Engineering, Inc.,* 225 Va. 97, 101, 300 S.E.2d 761, 763 (1983).

For the reasons stated, the Commission's award will be

*Affirmed.*

POFF, J., dissenting.

I dissent. In my view, *Mace* v. *Merchants Delivery,* 221 Va. 401, 270 S.E.2d 717 (1980), is legally indistinguishable. "Mace produced no medical evidence establishing his inability to resume his employment", and "[i]n light of . . . the absence of any medical evidence to the contrary, the Commission could only conclude Mace was able to return to unrestricted work . . . ." *Id.* at 403-04, 270 S.E.2d at 719. Shaffer produced utterly no medical proof that he was unable to work. Indeed, the evidence shows that Shaffer's attending physician released him for return to work, that Shaffer resumed his former position, and that Shaffer resigned his job only after he suffered the accident at home. The only evidence of his inability to continue performing his regular duties was Shaffer's own declaration that he was disabled. As *Mace* teaches, self-diagnosis is insufficient, standing alone, to discharge the claimant's burden of proving disability.

The majority relies upon the doctor's opinion that the claimant's nervous condition was "chronic", *i.e.,* a condition "persisting over a long period of time." But a chronic nervous condition is not necessarily disabling. And surely, the doctor's opinion that claimant "will need to be seen periodically in my office for at least the next year" does not amount to a finding of disability.

I share the sympathy the majority feels for the claimant, but applying the doctrine of *stare decisis,* I would reverse the award and dismiss the claim.

CARRICO, C.J., and COCHRAN, J., join in dissent.