COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Moon, Judge Annunziata and Senior Judge Duff

CITY OF ALEXANDRIA

v.          Record No. 1777-95-4      MEMORANDUM OPINION[*] BY
                                      JUDGE ROSEMARIE ANNUNZIATA
D. ELOISE CLEPHAS                           MAY 14, 1996

          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Philip G. Sunderland (Amy Marschean; Office
          of the City Attorney, on briefs), for
          appellant.

          John J. O'Donnell, Jr., for appellee.


     This matter came before the commission on the application of

appellant, City of Alexandria ("employer"), alleging appellee,

D. Eloise Clephas ("claimant"), was able to return to her

pre-injury employment. The deputy commissioner concluded that

claimant could return to work and terminated her temporary total

compensation. The full commission reversed, and employer

appeals. Finding no error, we affirm.

                                      I.

     On June 3, 1991, claimant suffered a compensable injury by

accident when she fell down a staircase while inspecting a

building. Claimant injured her right shoulder and also suffered

pain in her neck and lower back and numbness in her hands. On

January 10, 1992, claimant underwent surgery to repair her right

rotator cuff and right carpal tunnel. Claimant subsequently

---

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

developed Reflex Sympathetic Dystrophy ("RSD") and remained unable to work.

On the day of her accident, claimant worked as an Existing Structures Inspector for employer and was responsible for enforcing city property standards by inspecting residential and commercial facilities. A job description completed in 1991 indicates that inspectors had to crawl, climb ladders, push or pull boxes, and lift a maximum of fifteen pounds occasionally, estimated to be one-third of the time or less. The 1991 description included tasks that inspectors might encounter on the job, but that the job did not necessarily require.

Claimant testified that, while the job required her to crawl on occasion, she never found it necessary to open a fire door or climb a ladder. Another inspector, Patricia Walker, testified that she had never had to crawl or climb a ladder, but that she found it necessary to open fire doors. Both Walker and the inspectors' supervisor, Thomas Flynn, testified that if an inspector faced a situation requiring the inspector to crawl, the inspector was instructed to seek assistance from other city personnel such as the Police, Fire Department, Animal Control, or New Construction Inspectors. Flynn testified that an inspector might have found it necessary to climb a stepladder to test a smoke alarm but stated that not all inspectors use the same techniques in performing their work. Walker testified that she uses a three-foot stick to test smoke alarms, for example.

Walker, Flynn, and claimant all testified that the job required writing and the use of a computer keyboard to input collected data.

In light of the 1991 job description, none of the four physicians who examined claimant from the date of her accident through the Spring of 1994 concluded that claimant had recovered sufficiently to return to full employment. One of those four, Dr. Roger Gisolfi, ordered a Functional Capacity Evaluation ("FCE") and other tests in June 1994.

On July 25, 1994, employer prepared a new job description for claimant's position. The 1994 description eliminated any requirement regarding climbing ladders or crawling. It describes the typical inspector's day as requiring one and one-half hours of paperwork before beginning inspections, frequent movement in and out of a car, continuous walking in and out of buildings, and the use of a three-foot, one-pound stick to test safety devices during inspections. The 1994 description indicates that inspectors are to have property owners move furniture, and, where high or unsafe areas are to be inspected, inspectors are required to seek assistance from other city personnel such as the Fire Department, Police Department, Animal Control, or each other. The 1994 description describes standing, walking, and driving as the main physical activities associated with the job and notes that the job requires continuous "Fine motor – finger" activity and extensive writing. The 1994 description further indicates

that no climbing, crawling, or heavy pushing, exceeding thirty pounds, is required and that only rarely would an inspector have to push small furniture or a fire door.  The 1994 description was compiled to comply with the Americans With Disabilities Act, which requires that only the essential functions of a job be described.  That description was based on an interview with the inspectors' supervisor and observations of an inspector at work.

Based on the 1994 job description and the findings of the 1994 FCE, Dr. Gisolfi released claimant to return to full employment on August 17, 1994.  On August 31, employer filed an application for hearing, seeking to terminate claimant's temporary total benefits.  Subsequently, claimant was examined by Dr. David Kavjian and Dr. Hugo Davalos.  Based on their examinations of claimant and their review of the results from the tests conducted in June 1994, both Drs. Kavjian and Davalos concluded that claimant remained limited in her functional capacity and could not return to full employment.  It is unclear upon which job description Drs. Kavjian and Davalos based their opinions.

The full commission reversed the deputy commissioner's decision to terminate benefits, concluding that employer had not proven claimant capable of performing her pre-injury job.  The commission found that all of the doctors agreed with the diagnosis of RSD and bilateral carpal tunnel syndrome.  It also focused on Dr. Gisolfi's testimony that claimant could not get on

her hands and knees, climb ladders, or open heavy doors. The commission concluded that, although claimant's job description had been revised to eliminate those activities, employer failed to meet its burden of proving claimant able to make a full and unconditional return to all aspects of her pre-injury employment.

## II.

Factual findings made by the commission are "conclusive and binding" upon this Court on review. Code § 65.2-706. A question raised by conflicting medical opinion is a question of fact. Celanese Fibers Co. v. Johnson, 229 Va. 117, 120, 326 S.E.2d 687, 690 (1985); City of Norfolk v. Lillard, 15 Va. App. 424, 429, 424 S.E.2d 243, 246 (1992). This Court on appeal does not judge the credibility of the witnesses or weigh the evidence. Johnson, 229 Va. at 121, 326 S.E.2d at 690. "[I]t is our duty to determine whether credible evidence supports the commission's findings . . . and, if such evidence exists, to sustain the finding." Id. (quoting Cook v. City of Waynesboro, 225 Va. 23, 31, 300 S.E.2d 746, 750 (1983)); see also Stancill v. Ford Motor Co., 15 Va. App. 54, 58, 421 S.E.2d 872, 874 (1992).

The threshold test for compensability is whether the employee is able fully to perform the duties of pre-injury employment. Sky Chefs, Inc. v. Rogers, 222 Va. 800, 805, 284 S.E.2d 605, 607 (1981); Johnson, 229 Va. at 120, 326 S.E.2d at 690. Employer contends that the commission failed to apply the correct test in evaluating whether claimant was precluded from

performing her pre-injury job and erred in rejecting the revised job description. It contends the commission erroneously focused not on claimant's pre-injury duties as defined in the new job description but on the potential physical activities associated with the job as set forth in the earlier description. We assume, without deciding, that the revised job description, which eliminated climbing, crawling, and opening heavy fire doors, provided a reliable basis for determining claimant's pre-injury work requirements and that it was error to disregard it. Nonetheless, we find credible evidence in the record to support the commission's decision, notwithstanding its failure to consider the 1994 description.

Employer does not dispute that the job, according to either description, requires employees to use their hands for a variety of fine motor tasks, such as typing and extensive writing. The evidence in the case establishes, however, that claimant's use of her hands was limited and that she is not fully capable of performing such tasks. Medical evidence shows that claimant was limited to work which did not require "the repetitive use of the hands such as typing" and that claimant remained "very limited in her functional ability, particularly with respect to her hands." Tests ordered by Dr. Gisolfi confirm that claimant was restricted in the use of her right hand and showed changes consistent with RSD in that hand. Dr. Gisolfi also notes that cold temperatures could affect claimant's RSD. Claimant herself

testified that she had difficulty writing, using a keyboard, and holding handrails, and that cold weather, in which the job required her to work, caused her great pain.

The existence of medical evidence in the case supporting employer's contention that claimant could return to work is not determinative.  See Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).  Where there is credible evidence to support the commission's findings, the award will be affirmed.  Id.

Accordingly, the commission's decision is affirmed.

Affirmed.