COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Lemons[*]
Argued at Richmond, Virginia


WHW, INC. AND
 SELECTIVE INSURANCE COMPANY OF AMERICA
                                    MEMORANDUM OPINION[**] BY
v.    Record No. 1460-99-2         JUDGE SAM W. COLEMAN III
                                         JULY 5, 2000
EDWARD CALVIN BRISTOW


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          S. Vernon Priddy III (Patsy L. Mundy; Sands,
          Anderson, Marks & Miller, on briefs), for
          appellants.

          William R. Curdts (Dunton, Simmons, & Dunton,
          L.L.P., on brief), for appellee.


     WHW, Inc. and its insurer, Selective Insurance Company of

America, appeal from the commission's award of temporary total

disability benefits to Edward Calvin Bristow.  WHW argues that

the commission erred in finding that Bristow had not

constructively refused selective employment and that Bristow

reasonably marketed his residual capacity.  Bristow

cross-appeals, arguing that the commission erred in sua sponte

---

     [*] Justice Lemons participated in the hearing and decision of
this case prior to his investiture as a Justice of the Supreme
Court of Virginia.

     [**] Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

terminating his benefits as of January 27, 1998.  We disagree and affirm the commission's decision.

I.  BACKGROUND

On April 25, 1996, Bristow suffered a compensable neck, back, and head injury in a motor vehicle accident while working for WHW.  Bristow was awarded temporary total disability benefits from April 25 through October 10, 1996, when he was returned to light-duty work.

After returning to light-duty work, Bristow did not seek medical treatment for his injury between February 1997 to November 1997.  Bristow testified that after being released to light-duty work, he nonetheless continued to experience lower back pain.  He testified that he did not seek additional medical treatment for the pain during this period because he believed that WHW would not pay for the treatment.  On November 14, 1997, complaining of lower back and neck pain, Bristow sought medical treatment from his treating physician, Dr. George C. Green.  Bristow's treating physician diagnosed Bristow with chronic low back sprain and instructed Bristow not to work with heavy equipment for three weeks.  On December 3, 1997, Bristow suffered a stroke, which affected, among other things, his speech.  On December 10, 1997, Bristow saw Dr. Green for a follow-up visit, and Bristow reported to Dr. Green that he had not worked for three weeks, as prescribed, and that he was not

experiencing any back or neck pain.  Based on this examination, Dr. Green opined that the vibrations from working as a heavy equipment operator exacerbated Bristow's back injury and that Bristow could not "return to his work as a heavy equipment operator as the vibrations probably were exacerbating his symptoms."

Dr. James R. Robusto, Bristow's family practitioner, examined Bristow on December 15, 1997, and reported that as a result of the stroke, Bristow had experienced excessive aphasia and right facial weakness.  Dr. Robusto noted that the only residual effect from the stroke was speech difficulties for which Bristow was receiving therapy.

Within weeks of having the stroke, Bristow attempted to return to work because of financial considerations.  He testified that he still experienced back pain and that the stroke left him with a speech impediment.  On the day he returned to work, his employer informed him that he was no longer able to work for the company because his speech impediment posed safety concerns.  Bristow's supervisor testified that, except for Bristow's speech impediment, he would have been allowed to return to work.

On March 26, 1998, Bristow filed a claim with the commission seeking temporary total disability benefits, alleging an additional period of disability from December 10, 1997 and

continuing. The commission awarded benefits from December 10, 1997 through January 27, 1998, finding that Bristow had adequately marketed his residual capacity and that he was temporarily totally disabled. The commission found that Bristow presented evidence proving only that his disability extended through January 27, 1998; thus, the commission did not address whether Bristow's disability extended beyond that date.

## II. ANALYSIS

On appeal, we view the evidence in the light most favorable to Bristow, the prevailing party. See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). We accept the commission's factual findings when they are supported by credible evidence. See James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989).

### A. Ability to Return to Selective Employment

WHW argues that the commission erred by finding that the rule articulated in American Furniture Co. v. Doane, 230 Va. 39, 334 S.E.2d 548 (1985), and as applied by this Court in Eppling v. Schultz Dining Programs/Commonwealth of Va., 18 Va. App. 125, 442 S.E.2d 219 (1994), is not applicable. WHW further argues that the commission erred in determining that Bristow had not constructively refused selective employment. WHW asserts that after Bristow suffered a stroke which left him with a speech impediment, he was unable to safely perform the duties of his

- 4 -

light-duty employment.  Thus, because Bristow's inability to perform the light-duty work was caused by a factor unrelated to his industrial accident, his inability to perform the light-duty work was tantamount to a refusal of selective employment.

In Doane, the employee suffered a work-related injury to her back.  After the employee had surgery and recovered, the attending physician released Doane to return to light-duty work.  Doane, however, failed to report for light-duty work because of impairments to her hand, which were unrelated to and developed after her back injury.  Doane's treating physician opined that the injury resulting from the industrial accident did not preclude her from performing the offered selective employment.

The Supreme Court found the employer had met its burden of producing evidence that the selective employment offered to Doane was within her residual capacity.  The Court found that Doane, however, failed to show she was justified in refusing the selective employment.  The Supreme Court ruled that Doane failed to show the necessary causal connection between her arm impairment and her compensable injury.  The Court held that "[a]n employer, therefore, is absolved of liability for compensation if the employee refuses selective employment because of a physical condition unrelated to the original industrial accident and arising since the accident." Doane, 230 Va. at 43, 334 S.E.2d at 550.

- 5 -

In Eppling, the employee suffered a compensable injury and was subsequently returned to light-duty work.  The employee accepted the light-duty work, but after one month was terminated because of excessive absences caused by health problems unrelated to her compensable injury.  The commission found that because the employee was terminated for cause, she was permanently barred from receiving compensation benefits.  We held that the employee's inability to perform her selective employment because of unrelated health problems did not bar her from seeking reinstatement of her workers' compensation benefits.  However, we stated,

> [w]hen a non-work-related disability prevents a partially disabled employee from returning to his or her pre-injury work or from accepting selective employment, for purposes of the Act, the unrelated disability is not justification for the employee to refuse or not to perform selective employment or to fail to market his or her residual work capacity.  Thus, the inability of a disabled employee to do selective work or to market his or her residual capacity due to an unrelated disability is equivalent to an unjustified refusal of selective employment.

Eppling, 18 Va. App. at 130, 442 S.E.2d at 222 (citation omitted).

We find that WHW's reliance on Doane and Eppling are misplaced.  In September 1996, Bristow was released to light-duty work with several restrictions.  Dr. Green restricted Bristow to no prolonged sitting or standing, lifting no more

- 6 -

than twenty pounds, and operating only an excavator and tractor. Dr. Green also advised that Bristow take as many breaks as necessary.  Bristow's medical records reflect that he continued to experience back pain.  Bristow was treated again on November 14, 1997, when Dr. Green restricted Bristow from operating any heavy machinery for three weeks.  Bristow's treating physician restricted Bristow's work activity and never released him to his pre-injury work.  "The threshold test for compensability is whether the employee is 'able fully to perform the duties of his pre[-]injury employment.'"  Celanese Fibers Co. v. Johnson, 229 Va. 117, 120, 326 S.E.2d 687, 690 (1985) (quoting Sky Chefs, Inc. v. Rogers, 222 Va. 800, 805, 284 S.E.2d 605, 607 (1981)).

Credible evidence supports the commission's finding that Bristow continued to suffer back pain caused by his compensable injury until and continuing after his stroke on December 3, 1997 and that he was partially disabled due to the industrial accident as of December 3, 1997.  Thus, Bristow continued to be partially disabled, and his "inability" to perform the light-duty work was not based upon an unrelated disability that prevented him from performing the work, but rather upon the employer's decision that he not be permitted to do the work.

## B. Marketing Residual Capacity

WHW argues that the commission erred in finding that Bristow adequately marketed his residual earning capacity after his stroke.

A partially disabled employee is required to make reasonable efforts to market his residual earning capacity to be entitled to receive continued benefits. See National Linen Serv. v. McGuinn, 8 Va. App. 267, 269, 380 S.E.2d 31, 33 (1989). "In determining whether a claimant has made a reasonable effort to market his remaining work capacity, we view the evidence in the light most favorable to . . . the prevailing party before the commission." Id. at 270, 380 S.E.2d at 33. "What constitutes a reasonable marketing effort depends upon the facts and circumstances of each case." Greif Companies (GENESCO) v. Sipe, 16 Va. App. 709, 715, 434 S.E.2d 314, 318 (1993). We hold that the commission did not err in determining that claimant adequately marketed his residual work capacity.

Here, the commission noted that Bristow's intervening stroke affected his capacity to find suitable employment, particularly in light of his work-related partial disability. Dr. Harris opined that considering the type of labor in which Bristow was experienced and capable of performing, and in light of his training and educational level, he was "unemployable and disabled for purposes of Social Security disability." Although

Bristow's testimony was "vague" and did not clearly show what efforts he had made to market his work capacity after the stroke, the commission relied upon Dr. Harris' January 5, 1998 report which indicated that Bristow had job interviews scheduled "through the state" before the stroke but, after the stroke, he was not able to get an interview. In addition, he was ready and willing to return to light-duty work with his employer. In light of Bristow's level of education; prior work history, work which he cannot now perform; and physical limitations from the industrial accident and the stroke, the commission found that Bristow made a reasonable effort to market his residual capacity. Although the evidence of Bristow's efforts to secure other employment is minimal, it appears that Bristow made efforts under difficult circumstances to obtain job interviews but was unable to secure the interviews. We find that the commission's holding is supported by credible evidence.

### C. Termination of Benefits

Bristow argues that the commission erred in sua sponte closing the period of disability without evidence of when the disability ended or was expected to end. He further argues that the date the commission selected as the date the disability period ended was an arbitrary date that lacks support in the record.

The commission determined that Bristow failed to show a continuing disability beyond January 27, 1998, the date that his last medical report showed he was to receive medical treatment or attention. "There is no presumption in the law that once a disability has been established, a claimant will be assumed to remain disabled for an indefinite period of time. To the contrary, a party seeking compensation bears the burden of proving his disability and the periods of that disability." Marshall Erdman & Assocs., Inc. v. Loehr, 24 Va. App. 670, 679, 485 S.E.2d 145, 149-50 (1997) (citation omitted). Here, the last medical report was dated January 5, 1998, which showed that he was to have further testing or treatment on January 26, 1998, six months prior to the hearing before the deputy commissioner. The commission noted that with the exception of the change in intensity of Bristow's back pain reported on November 14, 1997, the medical records reflect that Bristow's condition appeared to be steadily improving following his return to work. In light of the absence of proof of the continuing disability, or further efforts to market his residual capacity, the commission did not err in determining that Bristow was not entitled to disability benefits after January 27, 1998.

Accordingly, we affirm the commission's decision and award of benefits.

Affirmed.