## COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Huff, O'Brien and AtLee
Argued by videoconference


VIRGINIA BEACH CITY PUBLIC SCHOOLS
  AND PMA MANAGEMENT CORPORATION, TPA
                                                    MEMORANDUM OPINION* BY
v.       Record No. 1103-20-1                       JUDGE MARY GRACE O'BRIEN
                                                    MARCH 2, 2021
SARAH NORMAN


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Robert L. Samuel, Jr. (Bryan S. Peeples; Pender & Coward, P.C., on
        briefs), for appellants.

        Matthew J. Weinberg (Inman & Strickler, PLC, on brief), for
        appellee.


        Virginia Beach City Public Schools and PMA Management Corporation, TPA (collectively,

"employer") appeal a Workers' Compensation Commission decision denying employer's request to

terminate benefits awarded to Sarah Norman ("claimant") for a work-related injury.  The

Commission held that employer did not prove by a preponderance of the evidence that claimant was

able to return to her pre-injury employment.  Employer contends that the Commission erred in

finding it failed to meet its evidentiary burden.  For the following reasons, we affirm the

Commission's decision.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

On appeal, this Court views the evidence in the light most favorable to claimant, the prevailing party before the Commission. See Merck & Co. v. Vincent, 71 Va. App. 439, 442 (2020).

Claimant was employed as a high school math teacher when she fell in the school parking lot on March 21, 2017 and sustained a head injury. As a result of her fall, she was diagnosed with a concussion and post-concussive syndrome and had issues with balance and vision. Claimant was awarded medical benefits "for as long as necessary" and temporary total disability compensation from the date of her injury and "continuing until conditions justify a modification thereof."

On July 29, 2019, employer moved to terminate the award, asserting that claimant's treating neurologist and optometrist had released claimant to her pre-injury employment. At a February 25, 2020 hearing before a deputy commissioner, employer introduced the deposition testimony of Dr. Michelle Kuczma, claimant's treating neurologist in 2018 and 2019. Dr. Kuczma diagnosed claimant with balance issues and restricted her from climbing ladders but opined that the restriction would not prohibit her from returning to work as a teacher. The doctor did not perform a full eye exam and deferred "any analysis of [claimant's] ability to work from a standpoint of her vision to another specialist."

Dr. Mary Alison Mercer, an optometrist, began treating claimant on May 4, 2017 for the vision issues that resulted from her injury. Multiple medical records reflected that claimant suffered from double vision, blurred vision, headaches, and light sensitivity, which were exacerbated by viewing a computer screen. Dr. Mercer's treatment included a recommendation to "decrease monitor use (including TV screen)."

In May 2019, Dr. Mercer analyzed potential alternative employment for claimant and imposed certain work restrictions related to computer screen time. The restrictions required a

- 2 -

fifteen-minute break for each hour of screen time and provided that claimant should engage in "[n]o more than [two] hours of screen time per half day of work."

Employer then procured a vocational assessment of claimant's former job as a math teacher from Steven Schall, a certified work capacity evaluator. Schall toured the school with assistant principal Dr. William Washington, who described the general expectations for math teachers and provided a copy of the school's bell schedule. Schall saw that the classroom where claimant previously worked was equipped with an interactive white board, also called a Promethean board. In a written report, Schall described the white board as "technically a screen . . . used like a blackboard." He opined that claimant would be able to perform her pre-injury employment within Dr. Mercer's restriction to "stay[] under the [two] hour limit for both morning and afternoon for computer monitor screen time." Schall did not think that Dr. Mercer considered using the white board to count as screen time.

Schall had never performed an evaluation where the disability involved an employee's vision, and he did not speak with claimant or observe any other math teachers. At the hearing, he explained that he was only asked to opine about "the amount of screen time involved" in claimant's job, not whether "the restrictions were appropriate."

Employer sent Dr. Mercer a copy of Schall's report and asked for confirmation that the job demands for a math teacher were within the restrictions she placed on claimant. In two July 2019 emails to employer, Dr. Mercer gave qualified medical approval for claimant to return to work but clarified the restrictions on screen time: "Max [two] hours of screen work per half day with a b[r]eak every [thirty] minutes of screen time."

Dr. Washington also testified at the hearing. He stated that his job as assistant principal includes supervising the math department and although the school wants teachers to "facilitate students using technology," use of a computer to teach math is "very minimal" and "there are no

demands for the teacher to use th[e] screen." Dr. Washington testified that although "resources . . . are available through the computer," teachers are "not required to use them[;]" during a two-hour teaching block, a teacher could spend fewer than ten minutes viewing a computer screen. According to Dr. Washington, "[s]ome math teachers deliberately avoid the screen because it's faster to write on the chalkboard." Dr. Washington explained that because he began his employment at the school after claimant's injury, he had never observed her teach.

Dr. Washington acknowledged that Dr. Mercer's limitation on claimant's screen use included not only computer screens but also the Promethean board. He described the Promethean board as "just like a big computer screen" that "sits on the wall," and "what's on [a desktop] computer is projected onto the wall."

He also addressed non-instructional use of the computer for planning lessons, grading, and taking attendance. He testified that although teachers use computers for these purposes, teachers "can be accommodated" by having someone else, such as a "tech secretary," input the data.

Claimant testified that before her injury, she taught three consecutive math classes for eighty-five minutes each, followed by a fifty-minute lunch period and an eighty-five-minute planning period. In two classes, she used the Promethean board to project lessons from her desktop computer for approximately sixty-five minutes per class. She used the Promethean board "a little less" in the third class. Claimant stated that none of the classrooms had blackboards. She indicated that she would have difficulty using the Promethean board because of her vision.

Claimant also stated that she used a computer for grading and planning lessons and teachers were required "to upload [lesson plans] to the server." Additionally, all communication between the front office and teachers occurred by email. In contrast to Dr. Washington, who testified that the school put "no demands" on teachers to use computers, claimant stated, "[W]e were expected to use

the computer to teach with." Claimant testified that she could not adequately perform her job without using screened devices in excess of Dr. Mercer's restrictions.

The deputy commissioner found that employer proved by a preponderance of the evidence that claimant was capable of returning to her pre-injury employment. On appeal, the full Commission unanimously reversed. It found claimant's testimony more persuasive than Dr. Washington's, and it disregarded Schall's opinion because it was based on incomplete information and lack of experience evaluating the effect of vision issues on employment. Specifically, the Commission reasoned:

> Mr. Schall formed his opinions by speaking with Dr. Washington and looking at a classroom. He had never done a review involving vision. He did not speak with [claimant] or any other math teachers regarding how they performed their work on any given day. Thus, we are not persuaded he had a complete or accurate understanding of [claimant's] work duties or the methods she used to perform her pre-injury job.

The Commission thus denied employer's application to terminate claimant's disability award.

ANALYSIS

The Commission's findings regarding claimant's work requirements and performance are questions of fact. See Clinchfield Coal Co. v. Parrott, 22 Va. App. 443, 446-47 (1996). "Factual findings of the . . . [C]ommission will be upheld on appeal if supported by credible evidence." Id. (first alteration in original) (quoting James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515 (1989)); see also Code § 65.2-706(A). "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Smith-Adams v. Fairfax Cnty. Sch. Bd., 67 Va. App. 584, 590 (2017) (quoting Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894 (1991)).

Pursuant to Code § 65.2-708(A), "upon the application of any party in interest, on the ground of a change in condition, the Commission may review any award of compensation and on such review may make an award ending, diminishing[,] or increasing the compensation previously awarded[.]" An employer seeking termination of an award bears the burden of proving, by a preponderance of the evidence, that an injured employee is "able fully to perform the duties of his pre[-]injury employment." Celanese Fibers Co. v. Johnson, 229 Va. 117, 120 (1985) (quoting Sky Chefs, Inc. v. Rogers, 222 Va. 800, 805 (1981)); see also Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 438 (1986) ("In an application for review of an award on the ground of a change in condition, the burden is on the party alleging such change to prove his allegations by a preponderance of the evidence."). Here, employer challenges the Commission's determination that it failed to establish by a preponderance of the evidence that claimant could perform her pre-injury employment as a math teacher.

In assessing the differences between Dr. Washington's description of claimant's pre-injury employment and claimant's testimony regarding her duties, the Commission found claimant's testimony more persuasive. Although Dr. Washington stated that teachers are not required to use computers, the evidence demonstrated that computer use was encouraged, typical, and often the only method for accomplishing work duties. Claimant testified that she taught three eighty-five-minute classes in a row, and for two of the classes, she spent sixty-five minutes — approximately three-quarters of her teaching time — using a screen, either on her computer or the Promethean board. Her classroom did not have a standard blackboard. She also testified that she used the computer for communication and lesson-planning.

The Commission put little weight on Dr. Washington's testimony that teachers are not required to use computers and credited claimant's evidence that computer use was in fact essential for her work duties. Whether an injured employee can return to pre-injury employment requires

- 6 -

consideration of how duties were actually, rather than ideally, performed. See Clinchfield Coal Co., 22 Va. App. at 446-47 (finding an injured mechanic with lifting restrictions unable to return to work because, although the employer provided equipment to lift heavy objects, employees were not required to use it and "often performed their mechanical duties by manually lifting . . . rather than using [the] employer's equipment"). Therefore, in determining whether claimant could perform her pre-injury job as a math teacher, the Commission did not err in relying on evidence of how computers were actually used, rather than on Dr. Washington's testimony about how they possibly could be used.

The Commission also was unpersuaded by Schall's opinion that claimant could perform her pre-injury duties within Dr. Mercer's restrictions. Specifically, the Commission found that Schall had never performed an assessment involving a vision disability and had not spoken with claimant or any other teachers about how they actually performed their duties. The Commission determined that Schall lacked "a complete or accurate understanding of [claimant's] work duties or the methods she used to perform her pre-injury job." Because claimant testified from her own work experience, in contrast to Schall who opined from an information deficit, the Commission's determination is supported by credible evidence and thus not subject to reweighing or reversal on appeal, despite a conflict with the finding by the deputy commissioner. See Commonwealth v. Bakke, 46 Va. App. 508, 528 (2005) (stating that when the Commission "'articulate[s] a basis for its conclusion . . . that . . . is supported by credible evidence in the record,' we are bound by its finding, not a contrary one made by the deputy commissioner" (alterations in original) (quoting Goodyear Tire & Rubber Co. v. Pierce, 9 Va. App. 120, 127 (1989))).

Employer also contends that claimant failed to rebut Schall's opinion that she could return to her employment. We reject this argument for multiple reasons. First, the burden was on employer to prove by a preponderance of the evidence that a change in condition justified the termination of

claimant's award. See Pilot Freight Carriers, 1 Va. App. at 438. The Commission was free to conclude that employer failed to meet this burden irrespective of any evidence offered by claimant. Additionally, the Commission was free to assess the credibility of claimant's testimony and find that it outweighed Schall's. Because that credibility determination is supported by credible evidence, we will not disturb it on appeal. See Celanese Fibers Co., 229 Va. at 121; Smith-Adams, 67 Va. App. at 590.

Further, in determining whether to terminate claimant's award, the issue was not whether the evidence demonstrated her ability to perform current work duties described in Schall's report. Rather, the issue was whether she could "perform the duties of [her] *pre*[-]*injury* employment." Celanese Fibers Co, 229 Va. at 120 (emphasis added) (quoting Sky Chefs, Inc., 222 Va. at 805). The Commission found her testimony credible when she explained that in her pre-injury experience at the school, computer use by teachers was not optional but "expected." It also found that claimant's classroom did not have an alternative to the Promethean board, such as a traditional blackboard, and that computers were necessary for planning lessons, grading, and administrative communication. Dr. Washington's testimony that claimant would not be required to use the computer or Promethean board is incompatible with these factual findings. Therefore, even considering current work conditions, the Commission did not err in finding insufficient evidence that claimant could perform her job within the screen-time restriction.

Additional evidence supports the Commission's conclusion that employer did not meet its burden. Dr. Mercer repeatedly noted in her medical records that claimant's vision issues were exacerbated by screen time and recommended reducing screen time to two hours twice a day, with a break every thirty minutes. Despite Schall's assertion that Dr. Mercer would not consider use of the Promethean board analogous to using a computer screen, Dr. Washington described the board as "a big computer screen" that "sits on the wall." Furthermore, at oral argument, employer's counsel

conceded that use of the Promethean board counted toward claimant's overall allotment of screen time. The record supports a finding that claimant could not perform her job as a math teacher without exceeding the restrictions on screen time imposed by Dr. Mercer.

It is the Court's "duty to determine whether credible evidence supports the Commission's finding . . . and, if such evidence exists, to sustain the finding." Id. at 121 (alteration in original) (quoting Cook v. City of Waynesboro, 225 Va. 23, 31 (1983)). "The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the Commission's finding." Wagner Enters., Inc., 12 Va. App. at 894.

Here, the record contains credible evidence supporting the Commission's finding that employer failed to prove, by a preponderance of the evidence, that claimant was capable of returning to her pre-injury employment. Therefore, we affirm the Commission's denial of employer's request to terminate claimant's disability award.

Affirmed.